Leona E. RUPE, Petitioner,

v.

A. S. J. SHAW, State Auditor,

and

John D. Conner, State Treasurer,
Respondents.

No. 36947.

Supreme Court of Oklahoma.

July 20, 1955.

Rehearing Denied Aug. 2, 1955.

Sid White, Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., Fred Hansen, F. Asst. Atty. Gen., for respondents.

BLACKBIRD, Justice.

This is an original action instituted in this Court by petitioner, as a resident taxpayer of this State, to enjoin, on her behalf and others similarly situated, the respondent State Auditor from issuing, and the respondent State Treasurer from paying, any State warrants out of two separate funds appropriated by the Regular Session of the last, or Twenty-Fifth Oklahoma Legislature. The fund dealt with in petitioner's first cause of action is the sum of $125,000 appropriated by Sec. 9 of said Legislature's House Bill No. 786, from the State's general fund to be used by the Oklahoma Game and Fish Commission to build a dam on Gates Creek in Choctaw County. The fund dealt with in petitioner's second cause of action is the sum of $1,250,000, which said Legislature's House Bill No. 941, purports to appropriate out of monies derived from the sale of "State of Oklahoma Building Bonds of 1955" for various State institutions named therein, and certain described additions and improvements to the Will Rogers Memorial at Claremore, and the construction of a museum at Pioneer Woman State Park, at Ponca City.

For convenience we will deal with petitioner's second alleged cause of action first. In it, she alleges facts showing that House Bill No. 941 was enacted pursuant to a recent election at which the people of the State voted certain amendments and additions to Art. 10 of the Oklahoma Constitution. Such submission to the people of the question of whether said article should be so changed was proposed by said Legislature's Joint Resolution No. 504, passed in March of this year, pursuant to authority contained in Art. 24, Sec. 1 of the Constitution, which reads in part as follows:

"Any amendment or amendments to this Constitution may be proposed in either branch of the Legislature, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered in their journals and referred by the Secretary of State to the people for their approval or rejection, at the next regular general election * * *. If a majority of all the electors voting at such election shall vote in favor of any amendment thereto, it shall thereby become a part of this Constitution."

At the primary election held July 1, 1952, the following amendment of the above-quoted section was submitted to the people as State Question No. 353, and adopted:

"No proposal for the amendment or alteration of this Constitution which is submitted to the voters shall embrace more than one general subject and the voters shall vote separately for or against each proposal submitted; provided, however, that in the submission of proposals for the amendment of this Constitution by articles, which embrace one general subject, each proposed article shall be deemed a single proposal or proposition." (Emphasis ours.) O.S.Supp.Const. art. 24, § 1.

The "proposal" made in Joint Resolution No. 504 for "amendment or alteration" of the Constitution's Art. 10, later effected by House Bill No. 941, was by ballot title set forth in the Joint Resolution's Sec. 2 as follows:

"The Gist of the Proposition is as Follows:

"Shall a Constitutional Amendment Amending Article X, Oklahoma Constitution, Sections 9, 10, and 26, by providing for ad valorem taxes for public schools and placing restrictions thereon and limiting consideration thereof in State guaranteed school program, authorizing additional uses of levy heretofore made for erecting public buildings, increasing debt limit of school districts for certain purposes, removing limitations on certain contracts beyond current year, and by adding Sections 32 and 33 to said Article X to provide additional funds for buildings for school districts, and for buildings and capital improvements at State institutions, be approved by the people?"

Petitioner charges that the above-quoted ballot title violates Art. 24, Sec. 1 of the Constitution, amended as above shown, in that it embraced "more than one general subject"; and that the people were thereby misled into approving, by their votes at said election, the participation by the above-named "State Park" and Will Rogers Memorial in an appropriation "for building and capital improvements at State institutions * * *". Respondents, on the other hand, urge that the proposal does not embrace more than one general subject, and that said park and memorial are "State institutions".

■■ This Court has not previously had occasion to consider the above-quoted 1952 amendment to Article 24, Section 1, supra, and neither of the parties cite instances in which such a provision in any other State's Constitution has been construed by the Courts. However, independent research reveals that similar provisions have been construed and applied by the courts of many other states. See State ex rel. Morris v. Mason, 43 La.Ann. 590, 9 So. 776, and other cases cited in the Annotations beginning at 94 A.L.R. 1510. From the better reasoned

of the opinions cited and others which recognize that such constitutional provisions are to receive a liberal, rather than a narrow or technical construction, which would overthrow proper legislation, especially where, as here, it has, previous to its enactment, been submitted to the people with the opportunity to discuss it and inform themselves concerning it, we find that generally provisions governing projects so related as to constitute a single scheme may be properly included within the same amendment; and that matters germane to the same general subject indicated in the amendment's title, or within the field of legislation suggested thereby, may be included therein. In this connection, see Perry v. Jordan, 34 Cal.2d 87, 207 P.2d 47. As to the distinction between ordinary legislation and proposed constitutional amendments, where there is a period of publicity in which those interested may acquaint themselves with the purpose thereof, see Ramsey v. Persinger, 43 Okl. 41, 141 p. 13, and Hillman v. Stockett, 183 Md. 641, 39 A.2d 803; State v. Lyons, 1 Terry 77, 5 A.2d 495, and other authorities cited in 11 Am.Jur., "Constitutional Law", sec. 31, under Note 19, and 82 C.J.S., Statutes, § 215a, Note 26.

▆ We have carefully examined all of the provisions of Joint Resolution No. 504, and have concluded that, when considered as a whole, they show that the general subject and purpose of the proposed constitutional amendment was to enable the State, as well as its school districts, to surmount previous limitations and inadequacies in their constitutional authority for raising funds. We think this general purpose was sufficiently declared in the resolution and, this being true, the details provided for its accomplishment in the law thereafter enacted may be regarded as incidents, Perry v. Jordan, supra, " 'necessary or convenient or tend(ing) to the accomplishment of one general design notwithstanding other purposes than the main design may be thereby subserved.' " State v. Moore, 76 Ark. 197, 88 S.W. 881, 884, 70 L.R.A. 671. State ex rel. Morris v. Mason, supra [43 La.Ann. 590, 9 So. 777], involved a proposal to incorporate into the Constitution " ' "An article on levies, schools, charities, pensions, drainage, lotteries * * *" ' ". Despite the seeming incongruity and apparent lack of logical relationship between the subjects quoted, the Court, in that case, upon a careful analysis of the matter and application of the above-cited principles, determined that the proposed addition to the Constitution had but one general object, namely: " * * * the extension of relator's lottery contract for a term of 25 years." Likewise, in the present case it is our opinion that though the means contemplated in the proposed constitutional amendment for realizing funds was to benefit more than just the school districts of the State, yet this did not alter the general subject or scheme of said proposal. Nor can we say that the ballot title was misleading. Petitioner intimates that, as it was worded, it enabled the Governor, and perhaps other advocates of the proposed amendment, to mislead the voters into believing that all money raised in accord with the proposed amendment would be used exclusively for school purposes. We cannot accept this allegation as sufficient to discharge petitioner's burden of establishing its invalidity in view of the following wording of the ballot title: " * * * and by adding Sections 32 and 33 to said Article X to provide additional funds for buildings for school districts, and for buildings and capital improvements at *State institutions* * * *." (Emphasis ours). As pointed out by respondents the length of such a title is necessarily limited to 100 words by Tit. 34, O.S.1951 § 9. With such a restriction in force it would have been impossible for the title to contain a summary or index of all of the provisions of the proposed measure, including auxiliary and subsidiary matters. In this connection see Perry v. Jordan, supra. Petitioner says that the term: "State Institutions" cannot include a state park, such as Pioneer Woman State Park, nor a memorial such as Will Rogers Memorial. There can be no doubt but that the State Park and Will Rogers Memorial both serve public purposes, see Thomas v. Daughters of Utah Pioneers, Utah, 197 P.2d 477; Annotations,

30 A.L.R. 1035, 1036, and, after observing the number and variety of State parks and so-called "memorials", ranging from statues to buildings of various sorts, whose erection have been authorized by State statute and paid for and maintained by State funds, both in this State and others, we are not prepared to say that they are not regarded by the public generally as "State Institutions", especially when the academic definitions of the term do not exclude such things. In this connection, see the definition of "institution" in Webster's New International Dictionary; and of "State Institutions" at 81 C.J.S., States, § 102. See also Bartling v. Wait, 96 Neb. 532, 148 N.W. 507. Upon consideration of the foregoing, we cannot agree with petitioner that the ballot title, as worded, had the effect she ascribes to it. We think that after such a title has been approved as required by Tit. 34, sec. 9, supra, it is entitled to some presumption of sufficiency similar to the one accorded it in at least one other state. Perry v. Jordan, supra. As held in Adwon v. Oklahoma Retail Grocers Ass'n, 204 Okl. 199, 228 P.2d 376, 377:
"The action of the lawmaking power must in all cases be upheld, unless its action is manifestly in contravention of the Constitution." In State v. Moore, supra, it was held:

"The courts should exercise their power of declaring an act of the Legislature void because in conflict with the Constitution with great caution, and only when the terms of the Constitution have been plainly violated.

"The same presumption in favor of the validity of a legislative enactment is indulged with reference to its form and the observance of the constitutional prerequisites and conditions as in case of the subject-matter of the legislation."

As hereinbefore indicated there is no showing of the alleged effect, or invalidity under the Constitution's Article 24, Sec. 1, of the questioned proposal for said document's alteration, except the allegations of the petitioner herself. Without some showing of substance or basis in fact for these allegations, we cannot without departing from the principles herein cited, allow them to overthrow an amendment that has been made pursuant to mandate of the people. We therefore hold that petitioner's second alleged cause of action establishes neither sufficient cause for striking down, as unconstitutional, the law enacted as House Bill No. 941, nor for enjoining Respondents as she prays.

Petitioner's first cause of action dealing with House Bill No. 786 is predicated upon the fact that by Sections 8 and 9 thereof, it purports to amend Sections 1 and 2 of House Bill No. 1065 of the Twenty-Fourth Oklahoma Legislature, 29 O.S.Supp. § 741 and note, by transferring to the Oklahoma Game and Fish Commission the duty of, and a fund for, building a dam on Gates Creek in Choctaw County (that the cited former law had prescribed for the Oklahoma Planning and Resources Board), while most of the rest of the Bill deals with matters and appropriations relating to the latter Board and the title of the bill nowhere specifically mentions the Oklahoma Game and Fish Commission or the two cited provisions pertaining to it, except to state that it is "An Act (among other stated accomplishments) Amending Section 1 and Section 2 of" said former House Bill. Petitioner says this is in violation of Art. 5, Sec. 57 of this State's Constitution, which provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

A reading of the title of House Bill No. 786 plainly shows that it is an appropriation bill to enable The Oklahoma Planning And Resources Board to carry out its work or functions. One of the divisions of said Board, for which money is therein appropriated, is the "Division Of Tourist And Outdoor Recreation"; and one of the statutory duties of said Board, according to the Act creating it, Tit. 74, O.S.1951 § 344.11, is to foster and promote "recreational facilities and advantages * * *". Another division of said Board for which the Bill contains an appropriation is the "Division Of Water Resources" created by the 1947 Act, Tit. 74, O.S.A. § 344.15, which by its section 8, Sess.Laws, 1947, p. 605, Tit. 74, O.S.A. § 344.17, also provides that in carrying out its authority and purpose, the Board shall "cooperate and coordinate with the State Game and Fish Commission in the acquisition and establishing of State Game Refuges so acquired by said Game and Fish Commission that may be adjoining and contiguous with any state park; * * *". Said section further provides that the Board "shall endeavor to procure from said Game and Fish Commission, where practical, agreements under which said Game and Fish Refuges may be united with said State Parks and operated and maintained under some joint arrangement or plan so that the recreational parks of the state may be more fully developed." Petitioner does not demonstrate, nor even contend, that the building of the dam on Gage Creek is not necessary or helpful in carrying on any of such work. In the absence of such showing, we think it may be assumed, for the purpose of this controversy, in accord with the presumption that the members of the Legislature, as public officials, and, in accord with their official oaths of office have complied with the Constitution, (including its Art. 5, §§ 56 and 57) that they would not have included the building of the dam in the same bill with appropriations for the Board, if such project did not have a direct relationship to the duties and functions of said Board. The power of the courts to declare an Act of the Legislative body void because in conflict with the Constitution "should be exercised by the courts with great caution, and only when the terms of the Constitution have been plainly violated." State v. Moore, supra. In the cited case it was further said:

"Chief Justice Marshall, who first authoritatively announced the doctrine that courts possess such power, subsequently said: 'The question whether a law be void for its repugnancy to the Constitution is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station could it be unmindful of the solemn obligation which that station imposes; but it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other.' Fletcher v. Peck, 6 Cranch 87, 3 L.Ed. 162. A similar expression is given by the same learned court in the case of Ogden v. Saunders, 12 Wheat. 213, 6 L.Ed. 606, where Mr. Justice Washington said: 'But if I could rest my opinion in favor of the constitutionality of the law on which the question arises on no other ground than this doubt so felt and acknowledged, that alone would, in my estimation, be a satisfactory indication of it. It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body by which any law is passed to presume in favor of its validity until its violation of the Constitution is proved beyond all reasonable doubt.'"

In Hill v. Rae, 52 Mont. 378, 158 P. 826, L.R.A.1917A, 495, Ann.Cas.1917E, 210, the constitutionality of an appropriation law was challenged under a provision of the Montana Constitution similar to Art. 5, sec. 56, of our own Constitution, upon which the petitioner also relies. There the Court held that there is no violation of

such provision where the Legislature appropriated funds to carry out the various objects for which a State bureau or commission was created, and we think that on principle it can make no possible difference that the objects for which a board, bureau or commission was created are as varied and comprehensive as those of the Oklahoma Planning and Resources Board. In accord with the principles and tests set forth therein for arriving at what is a single subject "in a constitutional sense", in Griffin v. Thomas, 86 Okl. 70, 206 P. 604, a 1917 law, c. 252, entitled an Act relating to the formation of Union Graded School Districts and providing for certain Consolidated Schools to participate in money appropriated by the Legislature and prescribing requirements therefor, was held to relate "primarily to only one general subject, namely, public schools of the state", and to be beyond the inhibition of Sec. 57, Art. 5, supra. Likewise, in Dunlap v. Board of Comm'rs, 85 Okl. 295, 205 P. 1100, this Court held that a statute entitled An Act relating to Road and Bridge Improvement Bonds, providing for the sale of unsold bonds issued to secure Federal aid, and empowering county commissioners under certain conditions to designate State highways, also related "primarily to only one general subject, namely, public roads * * *", and was not repugnant to Sec. 57, Art. 5, supra. The case of In re Lee, 64 Okl. 310, 168 P. 53, L.R.A.1918B, 144, was a challenge of the constitutionality of the 1915 law, c. 87, creating the Supreme Court Commission, which law contained one section providing for the deposit of a docket fee of $25 in lieu of the court costs previously required by law to be deposited with the Clerk of the Supreme Court. There this Court held that said statute did not embrace "more than one subject within the meaning of section 57, art. 5 * * *". More recently in National Mut. Casualty Co. v. Briscoe, 188 Okl. 440, 109 P.2d 1088, this Court had before it the question of whether Chap. 29, Sec. 2, Sess.Laws 1933, 85 O.S.1951 § 41, amending certain sections of the Workmen's Compensation Act violated the section of the Constitution here involved. The title of the 1933 act stated that it was an Act amending certain named previous laws relating to "Awards made under Workmen's Compensation Act", but one provision contained therein authorized, for the first time, the entering of such an award after the death of the injured employee. There, after reviewing the rules which govern such matters, it was held that: "If the title is broader than the act, and sufficiently brings the mind to that subject, it is sufficient." Therein it was said that the constitutional provision "is satisfied if an act has a general subject fairly indicated by the title * * *"; that "The title may be very general and need not specify every clause in the statute if * * * (they) * * are reasonably cognate to the general subject expressed"; that "to constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection with or relation to each other"; and that "The connection of relationship of the minor subjects need not be logical; it is enough that they are connected with and related to a single subject in popular signification." Under such rules we think the title of House Bill No. 786 is sufficient. By plainly showing that it is an Act to appropriate funds for a Board, whose name indicates it has to do with the State's "Resources", we think it sufficiently calls to mind the building of dams, which of recent years has become one of man's best known and most widely used methods of conserving and enabling the use of that most essential of resources, water. Certainly the building of dams to impound this resource cannot be considered discordant or diverse to the general subject of the Act, or, "by no fair intendment", as having any legitimate connection in the public or legislative mind with "Appropriations For The Support Of The Oklahoma Planning and Resources Board * * *". See Griffin v. Thomas, supra, and notice In re County Comm'rs, of the Counties Comprising Seventh Judicial District, 22 Okl. 435, 98 P. 557. As we view the matter for the purpose of the particular constitutional question here involved, it was not essential that the Act

prescribe that all items of appropriation "For The Support Of The Oklahoma Planning And Resources Board" be handled directly by that Board, if the expenditures prescribed therein to be made by another board or commission are for "The Support Of" said board in carrying out its statutory duties. As far as concerns the determination of the singleness or plurality of the subject of the Act, the detail as to which board or commission would be entrusted with the building of the Gates Creek Dam project and the appropriation for said project, is of little, if any more, significance than the allocation for a variety of purposes ranging from "public schools" to "charities" from the proceeds of the lottery contract in State v. Mason, supra, or the multiplicity of projects related to numerous matters connected with "aid to needy aged and blind" contained in the Act considered in Perry v. Jordan, supra. In view of the presumption above referred to, the provisions of Sections 8 and 9 must be considered as incidental to and "aimed at" carrying out the main subject of House Bill No. 786, above referred to. On the basis of this conclusion, we hold that the petitioner's first alleged cause of action, like her second one, establishes no sound basis sufficiently justifying our holding said law unconstitutional and/or granting the injunction prayed for. Incidentally, we notice in said petition a request that "provision be made to reimburse petitioner for her costs herein laid down and expended, including a reasonable attorney's fee", but, in her brief, her attorney makes no mention of, nor cites any authority authorizing this Court to grant, such request, except to say: "I expect no fee * * *". We therefore conclude that such request has been waived.

Petition denied.

JOHNSON, C. J., and WELCH, CORN, DAVISON and HALLEY, JJ., concur.

WILLIAMS, V. C. J., dissents.