**In re INITIATIVE PETITION NO. 344, STATE QUESTION NO. 630.**

**No. 74411.**

Supreme Court of Oklahoma.

June 19, 1990.

As Corrected June 22, 1990.

As Corrected on Denial of Rehearing Sept. 17, 1990.

Thomas Dee Frasier, Tulsa, for protestants.

Andrews Davis Legg Bixler, Milsten & Price by John C. Andrews, John F. Fischer, Douglas C. McBee, Robert H. Henry, Atty. Gen., and Neal Leader, Asst. Atty. Gen., Oklahoma City, for proponents.

HODGES, Justice.

This is a protest challenging Initiative Petition No. 344, State Question No. 630 (Petition). Protestants raise the following objections to the Petition: (1) The Petition is invalid because people who signed it were not given sufficient information to enable them to make a knowledgeable decision; (2) The ballot title of State Question No. 630 cannot be written to comply with Okla. Stat. tit. 34, § 9 (Supp.1983); (3) The Petition violates article XXIV, section 1 of the Oklahoma Constitution; and (4) The Petition violates Okla. Const. art. IV, § 1 and art. V. After reviewing the objections, we find that the Petition violates article XXIV, section 1 of the Oklahoma Constitution and, therefore, need not address the other issues.

The main thrust of Initiative Petition No. 344 is to repeal the existing article VI of the Oklahoma Constitution and replace it with a new article VI. Article VI is the article which defines the executive branch of government.

Changes made by the Petition include the following:

(1) shortens the terms of the non-attorney members of the Judicial Nominating Commission, a part of the judicial department of government, from the six years as set out in article 7–B(a)(3) to four years;

(2) alters the method of selecting the Lieutenant Governor;

(3) eliminates the constitutional authority for and the duties and functions of the State Pardon and Parole Board;

(4) gives the Governor sole authority to "grant reprieves, commutations, and pardons, after conviction, for all offenses, except cases of impeachment";

(5) repeals the requirement that the Governor report to the Legislature each case of reprieve, commutation, parole or pardon, granted;

(6) establishes a cabinet form of government consisting of ten named secretaries with authorization for another five;

(7) authorizes the Governor to submit a reorganization plan for the Executive Branch to the Legislature for approval;

(8) allows the governor to appoint a majority of all boards immediately upon tak-

ing office and the remaining members two years later;

(9) removes the power of the Legislature to enact laws determining how vacancies of elected offices of the Executive Branch are filled;

(10) removes the Governor's duty to give each house a full report of each state office and commission;

(11) repeals the Governor's pocket-veto after the Legislature adjourns;

(12) adds a process to declare the Governor disabled and provides for his replacement by the Lt. Governor if the disability continues for six months;

(13) repeals the Governor's absence from the state as an event triggering the passage of the Governor's duties to the Lt. Governor;

(14) transfers the power to designate the Lt. Governor's duties which are not enumerated in the Constitution from the Legislature to the Governor;

(15) adds the requirement that the Attorney General be licensed to practice law in the state;

(16) confines the State Auditor's duties to those enumerated in the Constitution and removes the Legislature's power to assign duties to the State Auditor, the State Treasurer, and the Insurance Commissioner;

(17) adds the requirement that the State Auditor examine the books of school districts and provide uniform accounting systems for school districts and municipalities;

(18) repeals the requirement that the Insurance Commissioner give bond;

(19) repeals the constitutional authority for the Arbitration and Conciliation Board;

(20) places the State Superintendent of Public Instruction under the supervision of the State Board of Education;

(21) repeals the prohibition against State, National or County officers from serving on the Board of Regents for two years after the tenure in office has ceased;

(22) removes the Lt. Governor, State Auditor, and the Superintendent of Public Instruction from membership on the Commissioners of the Land Office and adds the State Treasurer;

(23) repeals the prohibition against Executive officers receiving any fees, costs, or perquisites of the office or compensation other than received as service for the office;

(24) repeals the constitutional authorization for the Board of Agriculture;

(25) repeals the constitutional authorization for the Department of Mines; and

(26) repeals the requirement that Executive officers and commissioners maintain accounts and report their status to the Governor.

This list of changes does not reflect every change which would be made by the proposed amendment.

Article XXIV, section 1 of the Oklahoma Constitution states:

"No proposal for the amendment or alteration of this Constitution which is submitted to the voters shall embrace more than one general subject and the voters shall vote separately for or against each proposal submitted; provided, however, that in the submission of proposals for the amendment of this Constitution by articles, which embrace one general subject, each proposed article shall be deemed a single proposal or proposition."

Under this section of the Constitution, an amendment must embrace only one general subject. *In re Initiative Petition No. 314, State Question No. 550,* 625 P.2d 595, 608 (Okla.1981).

In his reply brief, the Attorney General relies on *Rupe v. Shaw,* 286 P.2d 1094 (Okla.1955), in support of his position that the Petition embraces only one subject. The Attorney General argues that this Court in *Rupe* adopted the liberal test rather than the more restrictive test adopted by some other jurisdictions and that under the liberal test the present Petition embraces only one general subject. This Court found that the petition in *Rupe* addressed only one general subject because the details were incidental to accomplishing the general design of the proposal. Many of the changes made by the present Petition

are not incidental or necessary to an overall design.

In *In re Initiative Petition No. 314*, this court extensively explained the policy behind the one subject rule.

"The constitutional mandate that multifarious amendments shall be submitted separately has two great objectives. The first is to prevent imposition upon or deceit of the public by the presentation of a proposal which is misleading or the effect of which is concealed or not readily understandable. The second is to afford the voters freedom of choice and prevent 'logrolling', or the combining of unrelated proposals in order to secure approval by appealing to different groups which will support the entire proposal in order to secure some part of it although perhaps disapproving of other parts."

*Id.* at 603 (quoting *Kerby v. Luhrs*, 44 Ariz. 208, 36 P.2d 549, 554 (1934)). Ultimately, this Court's, as well as other jurisdictions', decisions concerning a proposal's violation of the one subject rule have been based on this policy. *Id.*

After explaining the policy considerations, this Court refined the rule as follows:

"If the different changes contained in the proposed amendment all cover matters necessary to be dealt with in some manner, in order that the Constitution, as amended, shall constitute a consistent and workable whole on the general topic embraced in that part which is amended, and if, logically speaking, they should stand or fall as a whole, then there is but one amendment submitted. But, if any one of the propositions, although not directly contradicting the others, does not refer to such matters, or if it is not such that the voter supporting it would reasonably be expected to support the principle of the others, then there are in reality two or more amendments to be submitted, and the proposed amendment falls within the constitutional prohibition. . . . Changes suggested thereto should represent the free and mature judgment of the electors, so submitted that they cannot be constrained to adopt

measures of which in reality they disapprove, in order to secure the enactment of others they earnestly desire."

*Id.*

The Petition in the present case addresses numerous subjects from the method of the election of the Lt. Governor, to changing the term of board and commission members including non-attorney members of the Judicial Nominating Commission, to giving the Governor the sole authority "to grant reprieves, commutations, and pardons", to changing the Executive Branch to a cabinet form of government, to repealing the constitutional authority for certain boards. Some of the sections in the amendment are, at best, tenuously related to other sections. The sections are not so intertwined as to require that they be adopted at the same time in order to preserve the integrity of each section. It is not necessary that all the changes be contained in the same proposal in order that the Constitution be consistent on the general topic of the Executive Branch of the government. Clearly, the placing of sole authority with the Governor to grant reprieves, commutation, and pardons is not dependent on the method of electing the Lt. Governor or a cabinet form of government. A voter supporting any one of these provisions could not reasonably be expected to support the principle of the others.

*In re Initiative Petition No. 314*, 625 P.2d at 595, involved a petition to amend several sections of article XXVII. The petition embraced three subjects all involving the sale of liquor: advertising, franchising, and liquor by the drink. This Court found the Petition embracing all three subjects was misleading and "logrolling of the worst type" in violation of the one general subject rule. *Id.* at 607. The proposals in the present Petition are more loosely related than the proposals contained in Initiative Petition No. 314. Therefore, the present Petition must also violate the one general subject rule.

Considering the underlying purposes of the "one general subject" criteria, the Petition simply does not give the voters a choice. Voters who may be in favor of

changing the method of electing a Lt. Governor are compelled to accept a cabinet form of government and are simply not given a choice of rejecting one without the other. Even under the liberal rule suggested by the Attorney General, and discussed at great length in *In re Initiative Petition No. 319*, Okl., 682 P.2d 222 (1984), the petition violates article XXIV, section 1 of the Oklahoma Constitution.

■ The protestants also argue the invalidity of the Petition based on the propositions that the people who signed the Petition were not given sufficient information to enable them to make a knowledgeable decision and that the ballot title cannot be written to comply with title 34, section 9 of the Oklahoma Statutes. A review of the statement on the Petition basically contains the same information as the ballot title submitted by the Attorney General. As enumerated above, the Petition impacts at least 25 distinct subjects ranging from the Governor's veto power to the repeal of the constitutional authority for the Pardon and Parole Board to Governor's choice of a running mate for Lt. Governor. The statement on the Petition and the ballot title address only eight of the listed amendments.

The danger of having more than one subject addressed in a Petition is that the ballot title cannot accurately reflect the contents of the Petition. The ballot title, as well as the statement on the Petition, becomes so diluted that it is not informative or it is misleading to the voters because it does not contain the effect and impact of the Petition.

■ The right of initiative petition is not absolute. There are limits, both constitutional and statutory, on the process. *Community Gas and Service Co. v. Walbaum*, 404 P.2d 1014, 1016 (Okla.1965). Section 3 of title 34 requires that "[a] simple statement of the gist of the proposition" be printed on the Petition. Section 9 requires that the ballot title explain, in no more than 150 words, "the effect of the proposition." These statutes limit the process to the extent that the statement on the petition and the ballot title must be brief, descriptive of the effect of the proposition, not deceiving but informative and revealing of the design and purpose of the petition. The limitations imposed by sections 3 and 9 are necessary to prevent deception in the initiative process. "If a statutory provision is essential to guard against fraud, corruption or deception in the initiative and referendum process, such provision must be viewed as an indispensable requirement and failure to substantially comply therewith is fatal." *Id.* The voters, after reading the statement on the petition and the ballot title, should be able to cast an informed vote.

It appears from the design of Initiative Petition No. 344 that the effect would be to increase the power of the newly elected Governor from what the designers of the Constitution intended. The signatories on the Petition and the voters should be informed of this effect. There is nothing in the statement on the Petition or in the ballot title to so alert the reader. Failure to so inform the signatories and voters is deceptive and misleading, and therefore the Petition is invalid.

This Court is the Protector of our Constitution. While the electorate has a constitutional right to amend the Oklahoma Constitution, it is this Court's responsibility to see the petitions for change actually reflect the voters intent and comply with the requirements set out in both the Constitution and the statutes. In this case, the requirements are simply not met.

INITIATIVE PETITION NO. 344, STATE QUESTION NO. 630, IS INVALID AND IS ORDERED STRICKEN FROM THE BALLOT.

OPALA, V.C.J., and SIMMS, DOOLIN, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

HARGRAVE, C.J., and LAVENDER, J., dissent.