2006 OK 45

**In re INITIATIVE PETITION NO. 382, State Question No. 729.**

**No. O–103,021.**

Supreme Court of Oklahoma.

June 20, 2006.

Rehearing Denied Sept. 11, 2006.

---

**56.** See, ¶ 14 and accompanying footnotes, supra.

Jack S. Dawson, Kieran D. Maye, Jr., Robert E. Norman, Miller Dollarhide, Oklahoma City, OK, for proponent, Rick Carpenter.

Margaret McMorrow–Love, Diane M. Drum, Oklahoma City, OK, for protestants, Oklahoma Professional Economic Development Council, Inc., The Oklahoma Association of Business and Industry, d/b/a The State Chamber, The Greater Oklahoma City Chamber of Commerce, and Don Woods.

Kenneth Dale Jordan, Diane Lewis, Oklahoma City, OK, for amicus curiae, The City of Oklahoma City.

KAUGER, J.

¶ 1 The issue presented is whether Initiative Petition 382 is constitutional and thus able to be submitted to a vote of the people. We hold that because it violates the single subject rule of art. 5, § 57 of the Oklahoma Constitution, it may not, and we order that it be stricken from the ballot.

### FACTS

¶ 2 On September 21, 2005, Rick Carpenter (the proponent) filed Initiative Petition 382 (IP 382) with the Secretary of State, and within 90 days after it was filed, the proponent submitted signatures to the Secretary of State. On January 31, 2006, the Secretary of State verified that it contained the required number of signatures and delivered IP 382 to this Court. On February 7, 2006, Attorney General Drew Edmondson determined that the ballot title did not comply with 26 O.S. 2001 § 6–113 [1], and attached an amended ballot title noting that the measure deals with two subjects.[2] The proponent filed an appeal of the ballot title on March 9, 2006.

1. Title 26 O.S.2001 § 6–113 provides:
   "Ballots for state questions shall be printed in such a manner as to include the number of the state question, the ballot title, and the following language, "SHALL THE PROPOSAL BE APPROVED?" followed by the words "FOR THE PROPOSAL—YES" and "AGAINST THE PROPOSAL—NO", one above the other."

2. The new ballot title reads as follows:
   **"BALLOT TITLE**

On February 13, 2006, this Court ordered that notice of the purported sufficiency of IP 382 be published, and notice was published on February 20th. The Oklahoma Professional Economic Development Council, Inc., The Oklahoma Association of Business and Industry, d/b/a The State Chamber, The Greater Oklahoma City Chamber of Commerce, and Don Woods (the protestants) filed their protest on May 1, 2006. The briefing cycle was completed on May 22, 2006.

¶3 Art. 5, §§ 1 and 2 of the Oklahoma Constitution endow the citizens of Oklahoma with the right of the initiative. Section 1 provides:

The Legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature.

Section 2 provides in pertinent part:

The first power reserved by the people is the initiative, and eight per centum of the

This measure adds a new law to Oklahoma's statutes. The measure deals with two subjects:
1. Condemnation, and
2. Land use laws.
Condemnation (taking) occurs when government forces the sale of private land for public use. The measure prevents the government from taking private property to transfer to a private party. The measure provides for exceptions to this prohibition. It allows taking property to protect public health and safety. It permits taking certain interests to finance the property's purchase. It allows taking property for transportation or utility facilities. It permits taking property for transmission systems. It allows private businesses who provide retail services to a public facility's customers to own an interest in the public facility.
'Land use laws' are laws and rules governing the use or division of land. When some new land use laws reduce a property's fair market value, the government must pay the property owner. This payment requirement does not apply to laws that protect public health and safety. Nor does it apply to laws required by federal law or nuisance laws. It does not apply to laws that limit the use of property for nude dancing or for the sale of pornography.
**SHALL THE PROPOSAL BE APPROVED?**
**FOR THE PROPOSAL—YES _____**
**AGAINST THE PROPOSAL—NO _____.**"

legal voters shall have the right to propose any legislative measure, and fifteen per centum of the legal voters shall have the right to propose amendments to the Constitution by petition, and every such petition shall include the full text of the measure so proposed.... The ratio and per centum of legal voters hereinbefore stated shall be based upon the total number of votes cast at the last general election for the State office receiving the highest number of votes at such election.

The right of the initiative is precious, and it is one which this Court is zealous to preserve to the fullest measure of the spirit and the letter of the law.[3] Because the right of the initiative is so precious, all doubt as to the construction of pertinent provisions is resolved in favor of the initiative.[4] The initiative power should not be crippled, avoided, or denied by technical construction by the courts.[5] However, the right of the initiative is not absolute, and is subject to constitutional and statutory limits.[6]

¶4 IP 382 seeks to add a new section to Title 27 of the Oklahoma Statutes.[7] The proposed new section to Title 27 would limit

3. *In re Initiative Petition No. 349*, 1992 OK 122, ¶35, 838 P.2d 1, *cert. denied*, 506 U.S. 1071, 113 S.Ct. 1028, 122 L.Ed.2d 173 (1993); *Oliver v. City of Tulsa*, 1982 OK 121, ¶11, 654 P.2d 607; *In re Referendum Petition No. 18*, 1966 OK 152, ¶11, 417 P.2d 295.

4. *In re Initiative Petition No. 349*, see note 3, *supra*; *Oliver v. City of Tulsa*, see note 3, *supra*; *Ruth v. Peshek*, 1931 OK 674, ¶25, 5 P.2d 108.

5. *In re Initiative Petition No. 360*, 1994 OK 97, ¶9, 879 P.2d 810; *Ruth v. Peshek*, see note 4, *supra*.

6. United States Const. art. IV, cl. 2; Okla. Const. art. 1, § 1; Okla. Const. art. 5, § 6; *In re Initiative Petition No. 349*, see note 3, *supra*; *In re Initiative Petition No. 348*, 1991 OK 110, ¶5, 820 P.2d 772; *In re Initiative Petition No. 344*, 1990 OK 75, ¶14, 797 P.2d 326.

7. The new section proposed to be added to Title 27 reads as follows:

"(1) Private property shall not be taken or damaged if at the time of the condemnation the public body condemning the property, or its designee, intends to convey fee title to all or a portion of the real property, or a lesser interest

the power of public bodies to take private property by eminent domain and require just compensation to be paid to any landowner whose property value is negatively affected by a zoning law. IP 382 first proposes that no private property may be taken by a public body if any interest in that property is subsequently conveyed to a private party, with the following exceptions: 1) takings to protect public health and safety; 2) takings of certain interests to finance the property's purchase; 3) takings of property for transportation or utility facilities; 4) takings of property for transmission systems; and 5) conveyances of interests in public facilities to private retail businesses who primarily serve the facility's customers.

¶ 5 IP 382 next proposes that an owner of private real property is entitled to just compensation for any reduction in the fair market value of the property caused by the enactment or enforcement of a zoning law, with the following exceptions: 1) zoning laws that protect public health and safety; 2) zoning laws required by federal law or nuisance law; 3) zoning laws limiting the use of property for nude dancing or selling pornography; and 4) zoning laws enacted prior to the effective date of the proposed act. IP 382 also contains provisions placing the burden of proof on the public body and providing for an award of attorney fees, costs, and expenses to the landowner. IP 382 sets no minimum amount of reduction in property value to

than fee title, to another private party. This subsection shall not apply to:

(A) The condemnation of improved or unimproved property that constitutes a danger to the safety and health of the community by reason of dilapidation, lack of ventilation, light and sanitary facilities, deleterious land use or any combination of these factors;

(B) The granting of non-possessory interests in the property to be taken for the purpose of financing acquisition of the property;

(C) Property necessary for transportation or utility facilities or transmission systems; or

(D) Conveyances by a public body of interests lesser than the fee title in a publicly owned facility to a privately owned business for the provision of retail services designed primarily to serve the patrons of the facility.

(2) If the use or division of private real property is limited or prohibited by the enactment or enforcement of any land use law after the date of acquisition by the owner of the property in a manner that reduces the fair market value of the property, the owner shall be entitled to just compensation, and shall not be required to first submit a land use application to remove, modify, vary, or otherwise alter the application of the land use law as a prerequisite to demanding or receiving just compensation under subsection (6) of this section.

(3) Subsection (2) of this section shall not apply to land use laws:

(A) Limiting or prohibiting a use or division of real property for the protection of the public's health and safety, such as fire and building codes, health and sanitation regulations, solid or hazardous waste regulations, and pollution control regulations;

(B) Limiting or prohibiting a use or division of real property commonly and historically recognized as a public nuisance under common law;

(C) Required by federal law;

(D) Limiting or prohibiting the use or division of a property for the purpose of selling pornography or performing nude dancing, provided

such land use laws are consistent with the Oklahoma and United States Constitutions; or

(E) Enacted prior to the effective date of this act.

(4) Just compensation pursuant to subsection (2) of this section shall be equal to the reduction in the fair market value of the property resulting from enactment or enforcement of the land use law as of the date of enactment of the land use law.

(5) The burden of demonstrating that a land use law is exempt by subsection (3) of this section is on the public body enacting or enforcing the land use law.

(6) If a land use law continues to apply to private real property more than 90 days after written demand for just compensation is made to the public body enacting or enforcing the land use law by the owner of the real property, the owner shall have a cause of action for just compensation, and shall be entitled to attorney fees, costs, and expenses incurred in the prosecution of the action.

(7) Definitions—for the purposes of this section:

(A) 'Land use law' includes:

(ii) (sic) Any statute regulating the use or division of land;

(iii) Administrative rules of state agencies;

(iv) Comprehensive plans and zoning ordinances enacted by a public body; or

(v) Statutes and administrative rules regulating farming and forest practices.

(B) 'Owner' is the holder of fee title to the subject real property.

(C) 'Public body' is the state and its agencies, cities, counties, towns, or townships.

(8) The remedy created by subsection (2) of this act is in addition to any other remedy under the Oklahoma or United States Constitutions, and is not intended to modify or replace any other remedy.

(9) If any portion or portions of this amendment are declared invalid by a court of competent jurisdiction; the remaining portions of this amendment shall remain in full force and effect."

constitute an actionable claim, does not establish the method of valuing property, does not delineate how a landowner may establish causation between a reduction in property value and a zoning law, and sets no statute of limitations for making a claim. Construed broadly, IP 382 renders inefficacious any zoning law that falls outside of the exceptions in subsection 3.

## ■ ¶ 6 BECAUSE INITIATIVE PETITION 382 VIOLATES THE SINGLE SUBJECT RULE OF ART. 5, § 57 OF THE OKLAHOMA CONSTITUTION, IT MAY NOT BE SUBMITTED TO A VOTE OF THE PEOPLE.

¶ 7 Protestants argue that IP 382 violates the single subject rule of art. 5, § 57 of the Oklahoma Constitution because it addresses the separate subjects of: 1) limiting public bodies' power to take private property by eminent domain; and 2) requiring public bodies to pay landowners compensation when property values are adversely affected by zoning laws. The proponent contends that IP 382 addresses the single subject of regulating the government's power to take and damage private property, and that it merely attempts to restrict both physical and regulatory takings, each of which falls under the auspices of the single subject of comprehensively regulating governmental taking power.

■ ¶ 8 Art. 5, § 57 of the Oklahoma Constitution provides: "Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title. . . ." This provision is commonly known as the "single subject rule." The purposes of the single subject rule are: 1) to ensure that the legislators or voters of Oklahoma are adequately notified of the potential effect of the legislation;[8] and 2) to prevent "logrolling,"[9] the practice of assuring the passage of a law by creating a proverbial "Hobson's choice"[10] in which a legislator or voter is forced to assent to an unfavorable provision to secure passage of a favorable one, or conversely, forced to vote against a favorable provision to ensure that an unfavorable provision is not enacted.[11] The single subject rule applies to legislative acts promulgated through the initiative process, as well as those promulgated through the Legislature.[12]

■ ¶ 9 This Court interprets the single subject rule using a "germaneness" test: if the provisions are germane, relative, and cognate to a readily apparent common theme and purpose, the provisions are related to a single subject.[13] The most relevant questions under this analysis are whether a voter is: 1) able to make a choice without being misled; and 2) forced to choose between two unrelated provisions contained in one meas-

8. *Edmondson v. Pearce*, 2004 OK 23, ¶ 43, 91 P.3d 605, *cert. denied*, 543 U.S. 987, 125 S.Ct. 495, 160 L.Ed.2d 371(2004); *In re Initiative Petition No. 347*, 1991 OK 55, ¶ 15, 813 P.2d 1019; *In re Initiative Petition No. 314*, 1980 OK 174, ¶ 59, 625 P.2d 595; *Gibson Prods. Co. v. Murphy*, 1940 OK 100, ¶ 9, 100 P.2d 453.

9. The etymology of the term "logrolling" probably evokes the picture of a pioneer clearing a field. The landowner would enlist a neighbor to help roll a fallen tree too heavy to be moved by one person into a pile for burning. See *Black's Law Dictionary*, "logrolling" (8th ed.2004); *The American Heritage Dictionary of the English Language*, "logrolling" (4th ed.2000).

10. A "Hobson's choice" is an apparently free choice that offers no real alternative; in the parlance of our times, a "take it or leave it." The phrase finds its origin in the practice of an English livery stable proprietor named Thomas Hobson (1544?–1630), who required that his customers choose the horse nearest the stable door

or none at all. See *The American Heritage Dictionary of the English Language*, "Hobson's choice" (4th ed.2000).

11. *Edmondson v. Pearce*, see note 8, *supra* at ¶ 44; *In re Initiative Petition No. 360*, see note 5, *supra* at ¶¶ 17–18; *Johnson v. Walters*, 1991 OK 107, ¶ 14, 819 P.2d 694; *In re Initiative Petition No. 314*, see note 8, *supra* at ¶¶ 59, 63. The rule also exists to prevent the Legislature from "veto-proofing" a bill, or attaching a rider to a bill to prevent the Governor from having any real opportunity to veto the measure. See *Johnson v. Walters*, see this note, *supra*.

12. *Edmondson v. Pearce*, see note 8, *supra* at ¶ 44; *In re Initiative Petition No. 347*, see note 8, *supra* at ¶ 13.

13. *Edmondson v. Pearce*, see note 8, *supra* at ¶ 44; *In re Initiative Petition No. 363*, 1996 OK 122, ¶¶ 15–16, 927 P.2d 558; *Campbell v. White*, 1993 OK 89, ¶ 12, 856 P.2d 255; *Rupe v. Shaw*, 1955 OK 223, ¶ 11, 286 P.2d 1094.

ure.[14]

¶ 10 The first provision in IP 382 involves curtailing the power of public bodies to take private property by eminent domain. The inherent power of an entity to take private property for public use is called the power of eminent domain.[15] The power of eminent domain is limited by the Fifth Amendment to the United States Constitution. It provides in pertinent part:

No person shall ... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation.

The power of eminent domain is also limited in art. 2, §§ 23 & 24 of the Oklahoma Constitution. Section 23 provides:

No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner, except for private ways of necessity, or for drains and ditches across lands of others for agricultural, mining, or sanitary purposes, in such manner as may be prescribed by law.

Section 24 provides in pertinent part:

Private property shall not be taken or damaged for public use without just compensation....

This power remains dormant until the Legislature, by specific enactment, delineates the manner by which and the entity through which it may be exercised.[16] When an entity properly employs the power of eminent domain, it acquires an interest in the property ranging from an easement to fee simple title for which the entity must pay the landowner just compensation.

¶ 11 The second provision of IP 382 involves a requirement of just compensation to landowners whose property values are adversely affected by the adoption and enforcement of certain zoning laws. Land use or zoning laws are ordinances or other legislative enactments which govern the development or use of real estate.[17] The power to enact and enforce zoning laws is derived from a governmental entity's police powers to protect the health, safety, welfare, and morals of the community.[18] A governmental entity may broadly use its power to regulate land use unless the regulation does not have a substantial relationship to the public health, safety, morals, or general welfare or is an unreasonable and arbitrary exercise of its police power.[19] The regulation of the use of a parcel of private property, if it substantially interferes with the use or enjoyment of the property, can become a taking, but generally zoning laws do not rise to the level of a taking of private property requiring just

14. *In re Initiative Petition No. 344*, see note 6, *supra* at ¶¶ 10–11; *In re Initiative Petition No. 314*, see note 8, *supra* at ¶¶ 62–63.

15. *U.S. v. Jones*, 109 U.S. 513, 518–519, 3 S.Ct. 346, 27 L.Ed. 1015 (1883); *Mississippi & Rum River Boom Co. v. Patterson*, 98 U.S. 403, 406, 25 L.Ed. 206 (1878); *Pollard v. Hagan*, 3 How. 212, 44 U.S. 212, 223, 11 L.Ed. 565 (1845). *See also Black's Law Dictionary*, "eminent domain" (8th ed.2004).

16. *City of Midwest City v. House of Realty, Inc.*, 2004 OK 56, ¶ 19, 100 P.3d 678; *City of Tahlequah v. Lake Region Elec. Coop., Inc.*, 2002 OK 2, ¶ 7, 47 P.3d 467; *City of Pryor Creek v. Pub. Serv. Co.*, 1975 OK 81, ¶ 9, 536 P.2d 343.

17. *Wilkerson v. City of Pauls Valley*, 2001 OK CIV APP 66, ¶ 18, 24 P.3d 872, *cert. denied*, May 1, 2001; *Enterprise Partners v. County of Perkins*, 260 Neb. 650, 619 N.W.2d 464, 468 (Neb.2000); *Ford v. Board of County Comm'rs of Converse County*, 924 P.2d 91, 94 (Wyo.1996). *See also Black's Law Dictionary*, "land use regulation"

(8th ed.2004); *Black's Law Dictionary*, "zoning" (8th ed.2004).

18. *Garrett v. City of Oklahoma City*, 1979 OK 60, ¶ 4, 594 P.2d 764; *Nucholls v. Board of Adjustment of the City of Tulsa*, 1977 OK 3, ¶ 11, 560 P.2d 556; *McNair v. City of Oklahoma City*, 1971 OK 134, ¶ 12, 490 P.2d 1364. Municipalities derive their ability to regulate land use from statutes, for example, 11 O.S.2001 § 43–101 provides:

"For the purpose of promoting health, safety, morals, or the general welfare of the community, a municipal governing body may regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes."

19. *Nucholls v. Board of Adjustment of the City of Tulsa*, see note 18, *supra*.

compensation.[20]

¶ 12 The proponent would have us buttress his proposition that IP 382 addresses a single subject by adopting his nomenclature. He deems the use of the power of eminent domain a "physical taking," and the enforcement of zoning laws a "regulatory taking." While these terms may have some utility in the political debate on this issue, from a legal standpoint the latter term, as used by the proponent, is simply inaccurate. Zoning laws and takings are mutually exclusive. As Justice Oliver Wendell Holmes explained in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922):

> The general rule at least is, while property may be regulated to a certain extent, if regulation goes too far, it will be recognized as a taking.

While the question of whether a regulation has gone "too far" is decided on a case by case basis,[21] the United States Supreme Court has laid out two general instances where land use regulations become takings. In *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), the court held that regulations that compel a property owner to permit any physical invasion of his property, no matter how small, become takings that require compensation. In *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), Justice Scalia, writing for the majority, explained the second instance:

> ... (W)hen the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking. (Emphasis in original.)

So, when a zoning law interferes significantly with the use or enjoyment of property, the governmental unit has overstepped its police power, and the zoning law becomes no longer a land use regulation, but a taking that requires just compensation. It is precisely this legal delineation between zoning laws and takings that IP 382 seeks to erase. IP 382 does not address two types of takings, but instead takings and zoning laws.

¶ 13 The proponent maintains that IP 382 meets the germaneness test because the test is broad, liberal, and satisfied by all proposed laws but those with the most scattered and disconnected provisions, citing as an example the case of *Johnson v. Walters,* 1991 OK 107, 819 P.2d 694, where the Court struck down a bill that purported to address the single subject of "state government." The proponent also cites two examples of cases where seemingly disparate topics were held to be part of a single subject: *In re Initiative Petition No. 319,* 1984 OK 23, 682 P.2d 222, where the Court certified a proposal that included changes in the manner in which alcoholic beverages were sold, as well as abolishing the Alcoholic Beverage Control Board; and *Rupe v. Shaw,* 1955 OK 223, 286 P.2d 1094, where the Court certified a proposal that provided for ad valorem taxes for public schools, outlined how those taxes would be used, increased the debt limit for school districts, removed certain contract limitations, and provided additional funds for school districts and buildings and capital improvements at State institutions.

¶ 14 While a passing glance at these cases may seem to bolster the proponent's conception of an expansive germaneness test, a reader of these cases must be mindful of the instruction of our decision in *In re Initiative Petition No. 314,* 1980 OK 174, 625 P.2d 595. There we explained that seeming inconsistencies in our single subject rule jurisprudence melt away when one understands that each case was decided by determining whether the purposes behind the rule were offended. Whether we explicitly stated it or not,

---

**20.** *Stewart v. Rood,* 1990 OK 69, ¶ 38, 796 P.2d 321 (overruled on other grounds in *Dulaney v. Oklahoma State Dept. of Health,* 1993 OK 113, 868 P.2d 676); *Mattoon v. City of Norman,* 1980 OK 137, ¶¶ 10–11, 617 P.2d 1347; *Suntide Inn Operating Corp. v. State ex rel. Okla. State Highway Comm'n,* 1977 OK 204, ¶ 6, 571 P.2d 1207;

*Henthorn v. Oklahoma City,* 1969 OK 76, ¶ 10, 453 P.2d 1013.

**21.** *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Goldblatt v. Hempstead,* 369 U.S. 590, 594, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962).

the issue is not how similar or "related" any two provisions in a proposed law are, or whether one can articulate some rational connection between the provisions of a proposed law, but whether it appears that either the proposal is misleading or provisions in the proposal are so unrelated that many of those voting on the law would be faced with an unpalatable all-or-nothing choice.[22]

¶ 15 IP 382 presents a voter with exactly the sort of choice the single subject rule was enacted to prevent. The United States Supreme Court's recent decision in *Kelo v. City of New London*, 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005), has prompted a national discussion on the proper limitations on the power of eminent domain. Before *Kelo*, this Court addressed the issue in *City of Midwest City v. House of Realty, Inc.*, 2004 OK 56, 100 P.3d 678. There, we limited the power of eminent domain by holding that a municipality, when acting with a public trust, may not use a general power of eminent domain for economic redevelopment or removal of blighted property without express statutory authority to do so.[23] We have also limited the power of eminent domain most recently in *Board of County Commissioners of Muskogee County v. Lowery*, 2006 OK 31, 136 P.3d 639, where we restricted the power

of eminent domain by maintaining a narrow definition of "public purpose" which excluded "economic development" as Constitutional grounds for exercising the power of eminent domain. Because the concern continues, voters might approve of limitations on the power of eminent domain contained in IP 382. However, those who might approve the first subject of IP 382, would by no means necessarily approve of the unrelated second subject, which would seem to make most zoning laws, with a few exceptions, unworkable. To present the voters with such an all-or-nothing choice is clearly an attempt at logrolling, which violates a basic purpose of the single subject rule. Because IP 382 consists of two unrelated provisions, it does not comply with the single subject rule of art. 5, § 57 of the Oklahoma Constitution.

## CONCLUSION

¶ 16 We cannot undervalue the Oklahoma Constitutional right of initiative, but we also may not ignore our constitutional duty to ensure that in the exercise of the right of initiative, the provisions of the Constitution are adhered to.[24] This Court will declare a ballot initiative invalid in advance of a vote of the people only where there is a clear or manifest showing of unconstitutionality.[25]

**22.** *In re Initiative Petition No. 314*, see note 8, *supra* ¶¶ 59–60.

**23.** *City of Midwest City v. House of Realty, Inc.*, see note 16, *supra* at ¶ 1.

**24.** *In re Initiative Petition No. 349*, see note 3, *supra* at ¶ 19, quoting *Ralls v. Wyand*, 1914 OK 28, ¶ 2, 138 P. 158.

**25.** *In re Initiative Petition No. 362*, 1995 OK 77, ¶ 12, 899 P.2d 1145; *In re Initiative Petition No. 358*, 1994 OK 27, ¶ 7, 870 P.2d 782.

The doctrine of *Threadgill v. Cross*, 1910 OK 165, 109 P. 558, states that we may not hear a constitutional challenge to a proposed law before it is submitted to a vote of the people. However, if we were to certify IP 382 as a State Question, and it was accepted by the people, the effect of the *Threadgill* doctrine would be only to defer striking down the proposal a few months until the inevitable constitutional challenge that would follow the election. This would undoubtedly lead to the perception by the citizens of our state that their eagerly solicited votes on a matter of great public concern are ultimately meaningless acts in an elaborate charade. Since IP 382, if

enacted, could not withstand a constitutional challenge, it would be rendered little more than an expensive, non-binding opinion poll. Further, art. 5, § 6 of the Oklahoma Constitution provides:

Any measure rejected by the people, through the powers of the initiative and referendum, cannot be again proposed by the initiative within three years thereafter by less than twenty-five per centum of the legal voters.

While initiative voters must always face the dilemma posed by the three year rule, the submission of a patently unconstitutional measure, if defeated, will impair the initiative rights of those supporters who also support constitutional government. For all these reasons, we have overruled *Threadgill* by consistently holding that we have the authority and the duty to address a properly preserved constitutional challenge to an initiative petition before it is submitted to a vote of the people. See *In re Initiative Petition No. 349*, see note 3, *supra* at ¶¶ 18, 32–33; *In re Initiative Petition No. 348*, see note 6, *supra* at ¶ 25; *In re Initiative Petition No. 347*, see note 8, *supra* at ¶ 25; *In re Initiative Petition No. 341*, 1990 OK 53, ¶ 3, 796 P.2d 267; *In re Initiative Petition No. 315*, 1982 OK 15, ¶ 4, 649 P.2d 545;

¶ 17 Curtailing the power of public bodies to take private property by eminent domain is nothing new to this Court. *See Board of County Commissioners of Muskogee County v. Lowery, supra* at ¶ 15, 136 P.3d 639; *City of Midwest City v. House of Realty, Inc., supra* at ¶ 15, 100 P.3d 678. However, IP 382 violates art. 5, § 57 of the Oklahoma Constitution. To hold an expensive and unnecessary election on a proposal which could not withstand a subsequent constitutional challenge would be to do a disservice to the proponent, the protestants, and the people of Oklahoma. We order Initiative Petition No. 382 to be stricken from the ballot.

¶ 18 The proponent maintains that the severability clause found in paragraph 9 of the proposed act permits this Court to sever the unconstitutional portions of IP 382 from the constitutional portions and submit the latter to a vote of the people as State Question 729. This argument is inapplicable to the instant case. We do not today make any ruling on the constitutionality of any particular portion of IP 382, but hold that because the proposed act is comprised of two subjects, the entirety of IP 382 is fatally constitutionally flawed. Nothing prevents the proponent or any other citizen of the State from severing the two subjects, restarting the process of initiative, and, if successful, resubmitting the initiative petitions for certification as State Questions.[26]

**INITIATIVE PETITION NO. 382 IS DECLARED INVALID; ORDERED STRICKEN FROM THE BALLOT.**

WATT, C.J., WINCHESTER, V.C.J., EDMONDSON, TAYLOR, COLBERT, JJ., concur.

LAVENDER, HARGRAVE, OPALA, JJ., dissent.

*In re Supreme Court Adjudication of Initiative Petitions in Norman, Okla., Numbered 74–1 & 74–2,* 1975 OK 36, ¶ 19, 534 P.2d 3.

**26.** Because we find IP 382 violates art. 5, § 57 of the Oklahoma Constitution, and such a violation prevents IP 382 from being submitted to voters, we need not address the protestants' arguments

that: 1) IP 382 is an unconstitutional special law; 2) land use laws are administrative in nature and therefore not subject to the right of the initiative; and 3) IP 382 is violative of the Equal Protection Clauses of the United States and Oklahoma Constitutions. We also need not address the proponent's appeal of the Attorney General's amended ballot title.