IN RE: INITIATIVE PETITION No. 420 STATE QUESTION No. 804



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN RE: INITIATIVE PETITION No. 420 STATE QUESTION No. 804

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN RE: INITIATIVE PETITION No. 420 STATE QUESTION No. 804
2020 OK 10
Case Number: 118406
Decided: 02/04/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 10, __ P.3d __

 

IN RE: INITIATIVE PETITION No. 420, STATE QUESTION No. 804

LAURA NEWBERRY and ELDON MERKLIN, Petitioners,
v.
ANDREW MOORE, JANET ANN LARGENT and LYNDA JOHNSON, Respondents.

ORIGINAL PROCEEDING TO DETERMINE THE SUFFICIENCY OF
THE GIST OF INITIATIVE PETITION NO. 420, STATE QUESTION NO. 804

¶0 This is an original proceeding to determine the legal sufficiency of the gist statement in Initiative Petition No. 420, State Question No. 804. The petition seeks to create a new article to the Oklahoma Constitution, Article V-A, for the purpose of establishing the Citizens' Independent Redistricting Commission. The Petitioners filed this protest alleging the gist of the petition is insufficient. Upon review, we hold the gist of the petition does not fairly describe the proposed constitutional amendment and is invalid.

INITIATIVE PETITION NO. 420, STATE QUESTION NO. 804, IS
DECLARED INVALID AND ORDERED STRICKEN FROM THE BALLOT

Robert G. McCampbell and Travis V. Jett, GableGotwals, Oklahoma City, Oklahoma, for Petitioners.

D. Kent Meyers, Alison M. Howard, and Melanie Wilson Rughani, Crowe & Dunlevy, Oklahoma City, OK, for Respondents.

COMBS, J.:

I. FACTS AND PROCEDURAL HISTORY

¶1 On October 28, 2019, the Respondents/Proponents, Andrew Moore, Janet Ann Largent, and Lynda Johnson (Respondents), filed Initiative Petition No. 420, State Question No. 804 (IP 420), with the Secretary of State of Oklahoma. The initiative measure proposes for submission to the voters the creation of a new constitutional article, Article V-A, which would create the Citizens' Independent Redistricting Commission (Commission). IP 420 would vest the power to redistrict the State's House of Representatives and Senatorial districts, as well as Federal Congressional Districts, in this newly created Commission. IP 420 would also repeal current constitutional provisions concerning state legislative apportionment. Notice of the filing was published on October 31, 2019. Title 34 O.S. Supp. 2015, § 8(b). The Petitioners, Laura Newberry and Eldon Merklin (Petitioners), timely brought this original proceeding to protest the sufficiency of IP 420's gist statement. This matter was assigned to this office on December 17, 2019.

II. STANDARD OF REVIEW

¶2 "The first power reserved by the people is the initiative...." Okla. Const. art. 5, § 2; In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, ¶2, 376 P.3d 250; In re Initiative Petition No. 403, State Question No. 779, 2016 OK 1, ¶3, 367 P.3d 472. With that reservation comes "the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature." Okla. Cost. art. 5, § 1; In re Initiative Petition No. 409, 2016 OK 51, ¶2; In re Initiative Petition No. 403, 2016 OK 1, ¶3. "The right of the initiative is precious, and it is one which this Court is zealous to preserve to the fullest measure of the spirit and the letter of the law." In re Initiative Petition No. 382, State Question No. 729, 2006 OK 45, ¶3, 142 P.3d 400. See In re Initiative Petition No. 349, State Question No. 642, 1992 OK 122, ¶35, 838 P.2d 1. We have repeatedly emphasized both how vital the right of initiative is to the people of Oklahoma, as well as the degree to which we must protect it:

Because the right of the initiative is so precious, all doubt as to the construction of pertinent provisions is resolved in favor of the initiative. The initiative power should not be crippled, avoided, or denied by technical construction by the courts.

In re Initiative Petition No. 403, 2016 OK 1, ¶3 (quoting In re Initiative Petition No. 382, 2006 OK 45, ¶3).

¶3 However, while the fundamental and precious right of initiative petition is zealously protected by this Court, it is not absolute. Any citizen can protest the sufficiency and legality of an initiative petition. In re Initiative Petition No. 409, 2016 OK 51, ¶2; In re Initiative Petition No. 384, State Question No. 731, 2007 OK 48, ¶2, 164 P.3d 125. "Upon such protest, this Court must review the petition to ensure that it complies with the 'parameters of the rights and restrictions [as] established by the Oklahoma Constitution, legislative enactments and this Court's jurisprudence.'" In re Initiative Petition No. 384, 2007 OK 48, ¶2 (quoting In re Initiative Petition No. 379, State Question No. 726, 2006 OK 89, ¶16, 155 P.3d 32).

¶4 The gist of an initiative petition is required by 34 O.S. 2011, § 3, which provides in pertinent part: "[a] simple statement of the gist of the proposition shall be printed on the top margin of each signature sheet." The gist is required to be in "simple language" and should inform "a signer of what the measure is generally intended to do." In re Initiative Petition No. 363, State Question No. 672, 1996 OK 122, ¶20, 927 P.2d 558. Each signature sheet is attached to a copy of the initiative petition and is therefore available for review by any potential signatory. Id. The two combined form what is called the "pamphlet." Id. The gist must be short and because it will appear at the beginning of every page of the petition it can contain "no more than a shorthand explanation of a proposition's terms." In re Initiative Petition No. 362, State Question No. 669, 1995 OK 77, ¶10, 899 P.2d 1145. It need not contain the more extensive requirements for ballot titles contained in 34 O.S. Supp. 2018, § 9. Id. This Court described the importance of the gist and ballot title, as well as the requirements, in In re Initiative Petition No. 344, State Question No. 630, where we explained:

[T]he statement on the petition [the gist] and the ballot title must be brief, descriptive of the effect of the proposition, not deceiving but informative and revealing of the design and purpose of the petition. The limitations ... are necessary to prevent deception in the initiative process.... The voters, after reading the statement on the petition and the ballot title, should be able to cast an informed vote.

1990 OK 75, ¶14, 797 P.2d 326.

This Court further explained in detail how the gist of an initiative petition should be evaluated in In re Initiative Petition No. 409, where we stated:

This Court has long held that the purpose of the gist, along with the ballot title, is to "prevent fraud, deceit, or corruption in the initiative process." The gist "'should be sufficient that the signatories are at least put on notice of the changes being made,'" and the gist must explain the proposal's effect. The explanation of the effect on existing law "does not extend to describing policy arguments for or against the proposal." The gist "need only convey the practical, not the theoretical, effect of the proposed legislation," and it is "'not required to contain every regulatory detail so long as its outline is not incorrect.'" "We will approve the text of a challenged gist if it is 'free from the taint of misleading terms or deceitful language.'"

2016 OK 51, ¶3 (footnotes omitted) (quoting primarily In re Initiative Petition No. 384, State Question No. 731, 2007 OK 48, 164 P.3d 125). Because the purpose of the gist is to prevent fraud, deceit or corruption in the initiative process, any alleged flaw created by an omission of details in the gist must be reviewed to determine whether such omission is critical to protecting the initiative process. In re Initiative Petition No. 363, 1996 OK 122, ¶¶18-20. "The sole question ... is whether the absence of a more detailed gist statement ... without more, perpetuates a fraud on the signatories." Id. ¶19.

III. ANALYSIS

¶5 The gist statement of IP 420 is as follows:

This measure adds a new Article V-A to the Oklahoma Constitution. This new Article creates the Citizens' Independent Redistricting Commission and vests the power to redistrict the State's House of Representative and Senatorial districts, as well as its Federal Congressional Districts, in the Commission (rather than the Legislature). The Article sets forth qualifications and a process for the selection of Commissioners, a Special Master and a Secretary. It also sets forth a process for the creation and approval of redistricting plans after each Federal Decennial Census. In creating the redistricting plans, the Commission must comply with certain criteria, including federal law, population equality, and contiguity, and must seek to maximize compliance with other criteria, including respect for communities of interest, racial and ethnic fairness, respect for political subdivision boundaries, political fairness, and compactness. The Article creates a fallback mechanism in the event that the Commission cannot reach consensus on a plan within a set timeframe. It also sets forth procedures for funding and judicial review, repeals existing constitutional provisions involving legislative districts, codifies the number of state House of Representative and Senatorial districts, and reserves powers to the Commission rather than the Legislature.

Petitioners' Appendix to Application and Petition to Assume Original Jurisdiction and Review the Gist of Initiative Petition No. 420, Ex. B.

¶6 The Petitioners challenge the legal sufficiency of the gist statement. Their arguments focus mainly on its omissions, some more conspicuous than others, and to an alleged flaw in the actual petition itself concerning selection of the Panel that will select the commissioners. They claim these omissions prevent a potential signatory from being informed of the true nature[1] of the petition. The Petitioners' assert the petition's purpose is about more than just redistricting. Although the Petitioners' briefs have expressed the supposed purpose of the petition in several ways, they appear to believe the true nature of the petition concerns the elimination of partisanship in the redistricting process. The Respondents assert the purpose is to "safeguard against and combat improper partisan gerrymandering." Respondents' Response Brief at 11. Both interpretations are essentially the same, but we agree the gist does not adequately reflect this intent.

¶7 Certain alleged omissions need to be addressed in the gist to sufficiently inform a potential signatory that this measure is intended to curtail partisan gerrymandering. First, a shorthand explanation in simple language should convey the selection process and composition of the commissioners.[2] The petition requires a Panel to be designated by the Chief Justice consisting of retired Justices and appellate judges. Sections 4(A) (7) and 4(B)(4)(b) of IP 420. The Panel will review the applications for the Commission and select some of the commissioners. Section 4(B)(4)(b) of IP 420 also states that the Panel will be selected by random drawing. We agree with the Petitioners that this creates an inconsistency in the petition and should be clarified.[3] The Panel shall then identify three pools of applicants, each containing twenty applications. Section 4(B)(f) of IP 420. The three pools are composed as follows: 1) applicants affiliated with the state's largest political party, 2) applicants affiliated with the state's second largest political party, and 3) applicants not affiliated with the state's two largest political parties. Id. From these pools the Panel will select six commissioners randomly by lot; two from each pool. Section 4(B)(g) of IP 420. Then the six commissioners shall appoint one commissioner from each pool to complete the nine-member Commission. Section 4(B)(i) of IP 420. Without any mention of the selection process and composition of the Commission in the gist, a potential signatory is not informed of the intentional nonpartisan balancing of the Commission. Although the selection process need not be detailed, a simple statement concerning the selection and composition of the Commission is critical here to inform a potential signatory of the true nature of the petition.

¶8 Second, the gist fails to provide enough information concerning the qualifications of the commissioners[4] and it conspicuously omits a key limitation in its consideration of redistricting plans. The petition provides many restrictions on who may be a commissioner.[5] A detailed description of each need not be made part of the gist; however, a simple statement behind the purpose for these qualifications is necessary to inform potential signatories about the nonpartisan nature of the petition's redistricting design.[6] Additionally, the gist explains in great length what criteria the Commission must follow in creating redistricting plans but omits any mention of what criteria it must avoid. Section 4(D)(2)(b) of IP 420 removes from consideration "[t]he political party affiliation or voting history of the population of a district." Petitioners contend this provision is noticeably absent from the gist and its inclusion is necessary to reveal the purpose of the petition. We agree. Because this criterion is especially representative of the underlying purpose of the petition it should be, albeit briefly, mentioned.

¶9 We disagree with the Petitioners' assertion that the gist must state: 1) the commissioners are not elected or accountable to the voters, and 2) the Commission's composition underrepresents Republicans and Democrats and overrepresents unaffiliated electors based upon the makeup of the State's electorate. The first assertion should be resolved, as previously discussed, by a succinct description of the selection process in the gist and the second assertion is a policy argument which is beyond the necessary scope of the gist. A gist's explanation of its effect does not extend to policy arguments for or against the proposal. In re Initiative Petition No. 384, State Question No. 731, 2007 OK 48, ¶8, 164 P.3d 125. The gist need only convey the practical and not the theoretical effect of the proposed legislation. Id.

¶10 Lastly, the Petitioners argue the gist falls short of notifying potential signatories of the "true effect" of the petition by inadequately mentioning what sections of the Oklahoma Constitution are being repealed. We disagree. The gist states the petition "repeals existing constitutional provisions involving legislative districts." These repealed provisions are summarized as follows:

Section 6 of IP 420 repeals Sections 9A, 10A, and 11A-11E of Article V of the Oklahoma Constitution. Sections 9A and 10A provide for the apportionment of State Senators and State Representatives, respectively. Sections 11A-11E grant authority to the Legislature for apportionment of the Legislature. If apportionment is not accomplished within the parameters set in these sections, then the existing Bipartisan Commission on Legislative Apportionment will fulfill this task. Qualified electors are authorized to seek review in the Oklahoma Supreme Court of any apportionment order made by the Commission. The powers of review of this Court include the approval of the apportionment order or the remanding of the matter to the Commission with directions to modify the Commission's apportionment order. If the Commission fails to timely make an apportionment order, this Court is also authorized to compel the Commission to make an apportionment.

Although the gist does not specify the details of the repealed provisions, it provides enough information to a potential signatory that the petition will create a new system of redistricting. The gist also covers the broad subjects found in the repealed provisions, e.g., criteria for legislative districts, judicial review and fallback mechanisms. A potential signatory would understand the purpose is to repeal the current system of redistricting and replace it with a new one. Here, adding more detail would not be critical to protecting the initiative process from fraud. The underlying purpose is conveyed.

IV. CONCLUSION

¶11 A gist statement is a shorthand explanation of a proposition's terms written in simple language. It need not include every regulatory detail so long as its outline is not incorrect. However, the gist should be descriptive of the proposal's effect and sufficiently informative to reveal its design and purpose. In re Initiative Petition No. 384, 2007 OK 48, ¶7. We do not judge the wisdom, fairness, or logic of the proposed petition. See Gladstone v. Bartlesville Indep. Sch. Dist., 2003 OK 30, ¶12, 66 P.3d 442. For the above stated reasons, we find the gist fails to alert potential signatories about the true nature of the proposed constitutional amendment. The gist is not subject to amendment by this Court, and as a result, the only remedy is to strike the petition from the ballot. In re Initiative Petition No. 409, 2016 OK 51, ¶7.

INITIATIVE PETITION NO. 420, STATE QUESTION NO. 804, IS 
DECLARED INVALID AND ORDERED STRICKEN FROM THE BALLOT

¶12 Gurich, C.J., Darby, V.C.J., Kauger (by separate writing), Winchester (by separate writing), Combs, Kane and Rowe (by separate writing), JJ., concur.

¶13 Edmondson, J., concur in part; dissent in part.

¶14 Reif, S.J., dissent.

¶15 Colbert, J., recused.

FOOTNOTES

[1] In In re Initiative Petition No. 384, State Question No. 731, we held a petition should be stricken from the ballot because "a potential signatory, looking at the gist, did not have sufficient information to make an informed decision about the true nature of the proposed legislation" (emphasis added) and therefore it did not satisfy the requirements of "title 34, section 3." 2007 OK 48, ¶12, 164 P.3d 125.

[2] The gist only states the new Article "sets forth ... a process for the selection of Commissioners."

[3] The Petitioners argue the provision requiring the Chief Justice to designate the Panel is inconsistent with the provision that provides the Panel will be selected by random drawing.

[4] The gist only states the new Article "sets forth qualifications... of Commissioners."

[5] Section 4(B)(2)(a-f) of IP 420 provides for the qualifications of the commissioners. A member of the Commission shall have been continuously domiciled in this State for the five years immediately preceding the date of appointment and shall not have changed their registered political affiliation in the four years prior to such date. In addition, in the five years immediately preceding the date of appointment to the Commission, the commissioner shall not: 1) have held, or have an immediate family member who has held, a partisan elective office at the federal, state, or political subdivision level in this State, 2) have registered, or have an immediate family member who has registered, as a federal, state or local lobbyist, 3) have held office or served, or has an immediate family member who has held office or served, as a paid staff member for a political party, 4) have been nominated, nor have an immediate family member who has been nominated, as a candidate for elective office by a political party, and 5) have been an employee of the state legislature. The term "immediate family member" is defined in Section 4(A)(9) as a father, stepfather, mother, stepmother, son, stepson, daughter, stepdaughter, brother, stepbrother, sister, stepsister, husband, wife, father-in-law, or mother-in-law. Section 4(B)(6) also prohibits members from running for an elective office in a district created while they served on the Commission.

[6] The Respondents assert in their brief that the purpose behind these qualifications is to "simply prevent certain individuals with clear conflicts of interest from serving as Commissioners." Respondents' Response Brief at 9.

KAUGER, J., with whom DARBY, V.C.J., joins concurring:

Just as the gist in No. 118, 209, Institute for Alcohol Policy v. State ex rel. ABLE Commission did not inform voters that the Legislature would be barred from requiring alcohol wholesalers to sell the most popular, consumer desired brands to everyone without discrimination, this gist is defective for failure to inform the voters of the role of the Chief Justice in the selection of the redistricting panel.

Winchester, J., with whom Darby, V.C.J. and Kauger, J. join, concurring specially:

¶1 I concur, but I write separately to address glaring omissions in the gist. As the Court's opinion mentions, it is our duty to determine whether any omission of details in the gist is critical to protecting the initiative process--whether such omission prevents a potential signatory from being informed of the true nature of the petition. See In re Initiative Petition No. 384, State Question No. 731, 2007 OK 48, ¶ 12, 164 P.3d 125, 130; In re Initiative Petition No. 363, State Question No. 672, 1996 OK 122, ¶¶ 18-20, 927 P.2d 558, 567. Although the proposed gist states that the constitutional amendment will move the power to redistrict from the Legislature to the Commission, it omits another substantial change in where that power vests. IP 420 shifts power in the redistricting process from the Legislature to the Oklahoma Supreme Court, something the gist ignores. The gist also omits the extensive restrictions on who can serve on the Commission.

¶2 IP 420 vests power to the Court in that (1) the Chief Justice of the Supreme Court will select the Special Master to oversee the application process and training of the commissioners; (2) the Chief Justice will "designate" a panel consisting of a group of retired Judges or Justices who will oversee the creation of the Commission; and (3) the Supreme Court will be the fallback decision maker if the Commission cannot reach consensus on a plan within a set timeframe. The gist as written does not mention the Court, and from the gist alone, a potential signatory will not know that the Court will significantly be involved in redistricting.

¶3 The name Citizens' Independent Redistricting Commission gives the impression that the Commission will be formed independently by the citizens with no involvement from any branch of government. It is imperative that a potential signatory is informed from the gist that IP 420 may transfer the power to redistrict from one branch of government to another. The Chief Justice will not only have involvement in the creation of the Commission, but the Court could be the ultimate decision maker on redistricting. Merely stating that IP 420 "sets forth . . . a process for the selection" of commissioners or "creates a fallback mechanism" is insufficient. The gist as written will not allow the people of Oklahoma to cast an informed vote.

¶4 Further, IP 420's proposed qualifications without question severely restrict who may be a commissioner, Special Master, and Secretary of the Commission. The qualifications would restrict an individual from holding these positions if they or their immediate family members (e.g., father, stepfather, mother, stepmother, son, stepson, daughter, stepdaughter, brother, stepbrother, sister, stepsister, husband, wife, father-in-law, or mother-in-law) (1) hold a partisan office, (2) run for office, (3) serve as a lobbyist, (4) work for a political party, or (5) work for the Legislature. Further, an individual who desires to serve on the Commission cannot have changed his or her registered political affiliation in the four years prior to appointment.

¶5 Oklahoma certainly has an interest to prevent individuals with undue partisan influence and conflicts of interest in drawing the districts from which its citizens elect their representatives. Respondents argue IP 420's proposed qualifications serve that interest. However, a potential signatory should be informed from the gist of the broad restrictions for those seeking to serve on the Commission. Then, he or she can decide whether the qualifications serve Oklahoma's interest or burden potential applicants. Without including this information, the gist does not adequately notify potential signatories about the nonpartisan nature of IP 420's redistricting design.

Rowe, J., concurring specially:

¶1 I concur that the gist fails to alert potential signatories about the true nature of the proposed constitutional amendment. I write separately to explain why the gist should state that the commissioners are not elected nor accountable to the voters.

¶2 The purpose of the Citizens' Independent Redistricting Commission is to vest what is currently a partisan political process -- legislative redistricting -- in a supposed non-partisan, unelected commission. Thus, the crux of the commission's purpose is ostensibly to de-politicize the redistricting process, or in other words, the elimination of partisanship appears to be the primary intent of the commission's creation and purpose.

¶3 In Oklahoma, all political power is inherent in the people. Okla. Const. art. II, §1. Removing elected officials from the redistricting process, in effect, removes the people from the redistricting process.

¶4 The gist's statement that the commission must comply with "political fairness" is insufficient to notify signatories that its purpose is to remove elected officials from influencing the redistricting process. The elimination of partisan power over redistricting is the primary aim of the commission. This is accomplished by divesting elected representatives with the right to redistrict and vesting that right into the hands of commission members who are not elected and who are not accountable to the voters. Accordingly, it should be explicitly stated.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 75, 797 P.2d 326, 61 OBJ 1655, Initiative Petition No. 344, State Question No. 630, In re
Discussed
 1992 OK 122, 838 P.2d 1, 63 OBJ 2386, Initiative Petition No. 349, State Question No. 642, In re
Discussed
 1995 OK 77, 899 P.2d 1145, 66 OBJ 2313, In re Initiative Petition No. 362 State Question 669
Discussed
 2003 OK 30, 66 P.3d 442, GLADSTONE v. BARTLESVILLE INDEPENDENT SCHOOL DISTRICT NO. 30
Discussed
 2006 OK 45, 142 P.3d 400, IN RE: INITIATIVE PETITION NO. 382, STATE QUESTION NO. 729
Discussed at Length
 2006 OK 89, 155 P.3d 32, IN RE: INITIATIVE PETITION NO. 379
Discussed
 2007 OK 48, 164 P.3d 125, IN RE: INITIATIVE PETITION NO. 384, STATE QUESTION NO. 731
Discussed at Length
 1996 OK 122, 927 P.2d 558, 67 OBJ 3423, In re Initiative Petition No. 363, State Question No. 672
Discussed at Length
 2016 OK 1, 367 P.3d 472, IN RE INITIATIVE PETITION NO. 403 STATE QUESTION NO. 779
Discussed at Length
 2016 OK 51, 376 P.3d 250, IN RE INITIATIVE PETITION NO. 409, STATE QUESTION NO. 785
Discussed at Length
Title 34. Initiative and Referendum
 Cite
Name
Level

 34 O.S. 3, Petitions and Signatures
Cited
 34 O.S. 8, Filing Copy of Proposed Petition - Publication - Protest - Hearing and Determination - Signature Gathering Deadline
Cited
 34 O.S. 9, Ballot Title - Filing - Review - Appeal
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA