IN RE: INITIATIVE PETITION No. 426 STATE QUESTION No. 810



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN RE: INITIATIVE PETITION No. 426 STATE QUESTION No. 810

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN RE: INITIATIVE PETITION No. 426 STATE QUESTION No. 810
2020 OK 44
Case Number: 118686
Decided: 05/27/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 44, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 



IN RE: INITIATIVE PETITION No. 426, STATE QUESTION No. 810 ELDON MERKLIN and CLAIRE ROBINSON DAVEY, Protestants/Petitioners,
v.
JANET ANN LARGENT, ANDREW MOORE and LYNDA JOHNSON, Respondents/Proponents.

ORIGINAL PROCEEDING TO DETERMINE THE SUFFICIENCY OF THE GIST OF INITIATIVE PETITION NO. 426, STATE QUESTION NO. 810

¶0 This is an original proceeding to determine the legal sufficiency of the gist of Initiative Petition No. 426, State Question No. 810. The petition seeks to create a new article to the Oklahoma Constitution, Article V-A, for the purpose of establishing the Citizens' Independent Redistricting Commission. The Petitioners filed this protest alleging the gist of the petition is insufficient. Upon review, we hold the gist of the petition is legally sufficient.

THE GIST OF INITIATIVE PETITION NO. 426, STATE QUESTION NO. 810 IS LEGALLY SUFFICIENT 

Robert G. McCampbell and Travis V. Jett, GableGotwals, Oklahoma City, Oklahoma, for Petitioners.
D. Kent Meyers, and Melanie Wilson Rughani, Crowe & Dunlevy, Oklahoma City, OK, for Respondents.


COMBS, J.:
I. FACTS AND PROCEDURAL HISTORY
¶1 On October 28, 2019, the Respondents/Proponents, Andrew Moore, Janet Ann Largent, and Lynda Johnson (Respondents), filed Initiative Petition No. 420, State Question No. 804 (IP 420), with the Secretary of State of Oklahoma. The initiative measure proposed for submission to the voters the creation of a new constitutional article, Article V-A, which would create the Citizens' Independent Redistricting Commission (Commission). IP 420 would vest the power to redistrict the State's House of Representatives and Senatorial districts, as well as Federal Congressional Districts, in this newly created Commission. IP 420 was challenged in two separate cases. In In re Initiative Petition No. 420, State Question No. 804, 2020 OK 10, 458 P.3d 1080, certain protestants challenged the gist of the proposition found at the top of the signature sheet. On February 4, 2020, this Court held the gist was insufficient and declared IP 420 invalid because it did not describe the true nature of the initiative petition which was to curtail partisan gerrymandering. Id., ¶¶6-7, 11.
¶2 Two days later, February 6, 2020, the proponents of IP 420 filed a new initiative petition (Initiative Petition No. 426, State Question 810). The Secretary of State published the required notice of the initiative petition on February 13, 2020. Initiative Petition No. 426 (IP 426) is nearly identical to IP 420. It creates a new constitutional article, Article V-A, which would create the Citizens' Independent Redistricting Commission (Commission). Like IP 420, it would vest the power to redistrict the State's House of Representatives and Senatorial districts, as well as Federal Congressional Districts, in this newly created Commission. It provides how a Panel will be selected which will then review applications to be a commissioner and a process for how those commissioners are chosen (§4(A)(7) and §4(B)(4)(b), (f) & (g) of IP 426); it provides a process for approving a redistricting plan (§4(E)(1) of IP 426) and a "Fallback Mechanism" if the Commission does not approve a plan (§4(F) of IP 426); it also provides certain criteria the Commission shall seek to maximize compliance when creating a redistricting plan (§4(D)(1)(c) of IP 426).
¶3 On February 28, 2020, the Protestants/Petitioners, Eldon Merklin and Claire Robinson Davey filed their challenge to the gist of IP 426 pursuant to 34 O.S. § 8 (B).[1] Mr. Merklin was also a petitioner in In re Initiative Petition No. 420, State Question No. 804, 2020 OK 10, ¶11, 458 P.3d 1080. The Petitioners claim the gist of IP 426 is affirmatively inaccurate, omits significant details concerning the voting requirements on a redistricting plan as well as details on one of the several criteria used in creating a redistricting plan. They ask this Court to hold the gist of IP 426 is insufficient based upon these claims.
II. STANDARD OF REVIEW
¶4 "The first power reserved by the people is the initiative...." Okla. Const. art. 5, § 2; In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, ¶2, 376 P.3d 250; In re Initiative Petition No. 403, State Question No. 779, 2016 OK 1, ¶3, 367 P.3d 472. With that reservation comes "the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature." Okla. Cost. art. 5, § 1; In re Initiative Petition No. 409, 2016 OK 51, ¶2; In re Initiative Petition No. 403, 2016 OK 1, ¶3. "The right of the initiative is precious, and it is one which this Court is zealous to preserve to the fullest measure of the spirit and the letter of the law." In re Initiative Petition No. 382, State Question No. 729, 2006 OK 45, ¶3, 142 P.3d 400. See In re Initiative Petition No. 349, State Question No. 642, 1992 OK 122, ¶35, 838 P.2d 1. We have repeatedly emphasized both how vital the right of initiative is to the people of Oklahoma, as well as the degree to which we must protect it:
Because the right of the initiative is so precious, all doubt as to the construction of pertinent provisions is resolved in favor of the initiative. The initiative power should not be crippled, avoided, or denied by technical construction by the courts.
In re Initiative Petition No. 403, 2016 OK 1, ¶3 (quoting In re Initiative Petition No. 382, 2006 OK 45, ¶3).
¶5 However, while the fundamental and precious right of initiative petition is zealously protected by this Court, it is not absolute. Any citizen can protest the sufficiency and legality of an initiative petition. In re Initiative Petition No. 409, 2016 OK 51, ¶2; In re Initiative Petition No. 384, State Question No. 731, 2007 OK 48, ¶2, 164 P.3d 125. "Upon such protest, this Court must review the petition to ensure that it complies with the 'parameters of the rights and restrictions [as] established by the Oklahoma Constitution, legislative enactments and this Court's jurisprudence.'" In re Initiative Petition No. 384, 2007 OK 48, ¶2 (quoting In re Initiative Petition No. 379, State Question No. 726, 2006 OK 89, ¶16, 155 P.3d 32).
¶6 The gist of an initiative petition is required by 34 O.S. 2011, § 3, which provides in pertinent part: "[a] simple statement of the gist of the proposition shall be printed on the top margin of each signature sheet." The gist is required to be in "simple language" and should inform "a signer of what the measure is generally intended to do." In re Initiative Petition No. 363, State Question No. 672, 1996 OK 122, ¶20, 927 P.2d 558. Each signature sheet is attached to a copy of the initiative petition and is therefore available for review by any potential signatory. Id. The two combined form what is called the "pamphlet." Id. The gist must be short and because it will appear at the beginning of every page of the petition it can contain "no more than a shorthand explanation of a proposition's terms."[2] In re Initiative Petition No. 362, State Question No. 669, 1995 OK 77, ¶10, 899 P.2d 1145. It need not contain the more extensive requirements for ballot titles contained in 34 O.S. Supp. 2018, § 9. Id. This Court described the importance of the gist and ballot title, as well as the requirements, in In re Initiative Petition No. 344, State Question No. 630, where we explained:
[T]he statement on the petition [the gist] and the ballot title must be brief, descriptive of the effect of the proposition, not deceiving but informative and revealing of the design and purpose of the petition. The limitations ... are necessary to prevent deception in the initiative process.... The voters, after reading the statement on the petition and the ballot title, should be able to cast an informed vote.
1990 OK 75, ¶14, 797 P.2d 326. In McDonald v. Thompson, we noted ballot titles have specific statutory requirements that are more stringent than a gist because a ballot title is all a voter will see in the voting booth. 2018 OK 25, ¶10, 414 P.3d 367. Whereas, a potential signatory, at this stage of the process, may review the text of the petition itself to answer any questions or provide further details not found in the gist contained on the signature sheet. Id.
¶7 This Court further explained in detail how the gist of an initiative petition should be evaluated in In re Initiative Petition No. 409, where we stated:
This Court has long held that the purpose of the gist, along with the ballot title, is to "prevent fraud, deceit, or corruption in the initiative process." The gist "'should be sufficient that the signatories are at least put on notice of the changes being made,'" and the gist must explain the proposal's effect. The explanation of the effect on existing law "does not extend to describing policy arguments for or against the proposal." The gist "need only convey the practical, not the theoretical, effect of the proposed legislation," and it is "'not required to contain every regulatory detail so long as its outline is not incorrect.'" "We will approve the text of a challenged gist if it is 'free from the taint of misleading terms or deceitful language.'"
2016 OK 51, ¶3 (footnotes omitted) (quoting primarily In re Initiative Petition No. 384, State Question No. 731, 2007 OK 48, 164 P.3d 125). Because the purpose of the gist is to prevent fraud, deceit or corruption in the initiative process, any alleged flaw created by an omission of details in the gist must be reviewed to determine whether such omission is critical to protecting the initiative process. In re Initiative Petition No. 363, 1996 OK 122, ¶¶18-20. "The sole question ... is whether the absence of a more detailed gist statement ... without more, perpetuates a fraud on the signatories." Id. ¶19.
III. ANALYSIS
¶8 IP 426 is essentially a refiling of IP 420 which happened almost immediately after this Court determined the gist statement in IP 420 was insufficient. In re Initiative Petition No. 420, State Question No. 804, 2020 OK 10, ¶11, 458 P.3d 1080. Although there are some differences between the two proposed measures they are nearly identical and were submitted by the same proponents. In In re Initiative Petition No. 420, State Question No. 804, this Court determined the gist statement, through its omissions, failed to alert potential signatories about the true nature of the proposed measure which was to curtail partisan gerrymandering. Id., ¶¶7, 11. The gist in IP 420 was as follows:
This measure adds a new Article V-A to the Oklahoma Constitution. This new Article creates the Citizens' Independent Redistricting Commission and vests the power to redistrict the State's House of Representative and Senatorial districts, as well as its Federal Congressional Districts, in the Commission (rather than the Legislature). The Article sets forth qualifications and a process for the selection of Commissioners, a Special Master and a Secretary. It also sets forth a process for the creation and approval of redistricting plans after each Federal Decennial Census. In creating the redistricting plans, the Commission must comply with certain criteria, including federal law, population equality, and contiguity, and must seek to maximize compliance with other criteria, including respect for communities of interest, racial and ethnic fairness, respect for political subdivision boundaries, political fairness, and compactness. The Article creates a fallback mechanism in the event that the Commission cannot reach consensus on a plan within a set timeframe. It also sets forth procedures for funding and judicial review, repeals existing constitutional provisions involving legislative districts, codifies the number of state House of Representative and Senatorial districts, and reserves powers to the Commission rather than the Legislature.
Id., 5. We determined this gist: 1) did not mention the selection process and composition of the Commission; 2) did not provide enough information concerning the qualifications of the commissioners; and 3) failed to make any mention of the criteria the Commission was to avoid in making a redistricting plan, such as, the omission from consideration of "[t]he political affiliation or voting history of the population of a district." Id., ¶¶7-8. We held a simple and brief statement mentioning these components was necessary to inform a potential signatory about the true nature of the measure. Id. Justice Winchester concurred specially, and also found fault with the gist because it did not mention the role of this Court in the redistricting process. Id., ¶2 (Winchester, J., concurring).
¶9 The Respondents appear to have adequately addressed these concerns when they filed IP 426. The gist statement of IP 426 is as follows:
This measure adds a new Article to the Oklahoma Constitution, intended primarily to prevent political gerrymandering. The Article creates a Citizens' Independent Redistricting Commission, and vests the power to redistrict the state's House, Senatorial, and federal Congressional districts in the Commission (rather than the Legislature). The 9-member Commission will consist of 3 members from each of 3 groups, determined by voter registration: those affiliated with the state's largest political party; those affiliated with its second-largest party; and those unaffiliated with either. Commissioners are not elected by voters but selected according to a detailed process set forth by the Article: in brief, a panel of retired judges and justices designated by the Chief Justice of the Oklahoma Supreme Court will choose pools of approximately 20 applicants from each group, then randomly select 3 Commissioners from each pool. The Article sets forth various qualifications for Commissioners, Special Master, and Secretary, intended to avoid conflicts of interest (for example, they cannot have changed party affiliation within a set period, and neither they nor their immediate family may have held or been nominated for partisan elective office or served as paid staff for a political party or as a registered lobbyist in the last five years). It also sets forth a process for the creation and approval of redistricting plans after each federal Decennial Census, including, among other things, a method for counting incarcerated persons, public notice, and open meeting requirements. In creating the plans, the Commission must comply with federal law, population equality, and contiguity requirements, and must seek to maximize respect for communities of interest, racial and ethnic fairness, political fairness, respect for political subdivision boundaries, and compactness (in order of priority), without considering the residence of any legislator or candidate or a population's political affiliation or voting history except as necessary for the above criteria. The Article creates a fallback mechanism by which the state Supreme Court, using a report from the Special Master, will select a plan if the Commission cannot reach the required level of consensus within a set timeframe. It also sets forth procedures for funding and judicial review, repeals existing constitutional provisions involving legislative districts, codifies the number of state House and Senatorial districts, and reserves powers to the Commission rather than the Legislature. Please review attached Petition for further details.
Petitioners' Appendix to Application and Petition to Assume Original Jurisdiction and Review the Gist of Initiative Petition No. 426, Ex. A. The Petitioners contend, however, this gist statement is affirmatively inaccurate, omits an explanation of the Commission's voting requirements on a redistricting plan, and omits any information on what political fairness means.
A. The gist statement is not affirmatively inaccurate.
¶10 The Petitioners assert the gist is inaccurate because it states the Chief Justice of the Oklahoma Supreme Court will designate a Panel that will be involved in choosing pools of applicants to be a commissioner. They contend, this is inaccurate because §4(B)(4)(b) of IP 426 states the Panel members will be "selected by random drawing." The gist of IP 426 provides: "in brief, a panel of retired judges and justices designated by the Chief Justice of the Oklahoma Supreme Court will choose pools of approximately 20 applicants from each group, then randomly select 3 Commissioners from each pool." Section 4(B)(4)(b) of IP 426 states:
No later than December 15 of 2020, and no later than December 1 of each subsequent year ending in zero, the Chief Justice of the Oklahoma Supreme Court shall designate a Panel to review the applications. The Panel shall consist of three Judges or Justices who have retired from the Oklahoma Supreme Court or the Oklahoma Court of Criminal Appeals or the Oklahoma Court of Civil Appeals, and who are able and willing to serve on the Panel, selected by random drawing. If fewer than three state appellate Judges or Justices who are able and willing to serve have been identified, then the Chief Justice shall appoint a retired Oklahoma Federal District Court Judge who accepts such appointment. (emphasis added).
Petitioners propose that an accurate statement in the gist would be: "[A] randomly selected panel of retired judges and justices designated by the Chief Justice of the Oklahoma Supreme Court will choose pools of approximately 20 applicants from each group, then randomly select 3 Commissioners from each pool." Petitioners Brief at 5.
¶11 The Petitioner, Eldon Merklin, raised a similar issue in In re Initiative Petition No. 420, State Question No. 804, 2020 OK 10, 458 P.3d 1080, however, it dealt with the differences between §4(A)(7) and §4(B)(4)(b) of IP 420 and not just the language in §4(B)(4)(b) i.e., "designate" and "selected by random drawing."[3] In their Reply Brief, the petitioners in that case claimed the provisions of §4(A)(7) and § 4(B)(4)(b) of IP 420 were "self-contradictory." Reply Brief (118,406) at 1. Section 4(A)(7) of IP 420 explained "'Panel' shall refer to the group of retired Judges and Justices chosen by the Chief Justice of the Oklahoma Supreme Court to oversee the creation of the Commission." Id. However, §4(B)(4)(b) provides... "The Panel shall consist of three [retired] Judges or Justices . . . who are able and willing to serve on the Panel, selected by random drawing." Id. The petitioners also noted the gist in IP 420 "makes no mention of the issue at all." Id. at 2. The petitioners determined the remedy for all their challenges was "straightforward and is simply resolved by Proponents: refile with a new gist. (They may choose to resolve the conflict between IP 420, § 4(A)(7) and IP 420, § 4(B)(4)(b) as well.)." Id. at 3. In that case, the apparent conflict was with the word "chosen" in §4(A)(7) of IP 420 and the words "selected by random drawing" in §4(B)(4)(b) of IP 420. In our opinion, we addressed this concern with these two sections and agreed they created an inconsistency in the petition and should be clarified. We determined:
The petition requires a Panel to be designated by the Chief Justice consisting of retired Justices and appellate judges. Sections 4(A) (7) and 4(B)(4)(b) of IP 420. The Panel will review the applications for the Commission and select some of the commissioners. Section 4(B)(4)(b) of IP 420 also states that the Panel will be selected by random drawing. We agree with the Petitioners that this creates an inconsistency in the petition and should be clarified. (emphasis added).
In re Initiative Petition No. 420, State Question No. 804, 2020 OK 10, ¶7. Although the language used was "designated" rather than "chosen" or even chosen/designated, the opinion cites both sections of IP 420 in the context of the arguments made by the petitioners in their Reply Brief.
¶12 In drafting IP 426, the Respondents addressed the issue of the alleged conflicting terms. Section 4(A)(7) no longer uses the word "chosen" and now reads: "'Panel' shall refer to the group of retired Judges or Justices involved in the selection of Commissioners pursuant to Section 4(B)(4)." In addition, the gist now mentions the Panel selection process. The Respondents assert that neither the gist nor the petition now use the offending word "chosen" which they concede arguably might forgo any type of randomness in the Panel selection process. Respondents' Brief at 6. They contend, the term "designate" and "selected by random drawing" are not in conflict in §4(B)(4)(b) of IP 426. The Chief Justice of the Supreme Court will designate the retired Judges and Justices "who are able and willing to serve on the Panel." However, the "selected by random drawing" provision may never come into play. For instance, if only two retired Judges or Justices are able and willing to serve, then §4(B)(4)(b) requires the Chief Justice to "appoint a retired Oklahoma Federal District Court Judge who accepts such appointment." In that situation there would be no random drawing. It is clearly not inaccurate to say the Chief Justice designates these retired Judges and Justices. In fact, the language suggested by the Petitioners would be inaccurate. Their suggested language makes no mention of the Chief Justices' role in the selection process and leaves the potential signatory to believe all Panel members will be randomly selected. That is clearly not the case. In In re Initiative Petition No. 420, State Question No. 804, we held "[a]lthough the selection process need not be detailed, a simple statement concerning the selection and composition of the Commission is critical here to inform a potential signatory of the true nature of the petition." 2020 OK 10, ¶7. We find the Respondents sufficiently addressed those concerns in IP 426.
B. The information in the gist statement concerning the vote for approving a redistricting plan is sufficient.
¶13 Section 4(E)(1) of IP 426 concerns the vote count for approval of a redistricting plan. It provides:
1. Approval or Rejection of Plans. Each Commissioner has one vote. An affirmative vote of at least six (6) of the nine (9) Commissioners is required to approve a Plan, including at least one (1) Commissioner affiliated with each of the two (2) largest political parties in the state and one (1) Commissioner who is unaffiliated with either of the two largest political parties in the state.
If the Commission cannot approve a State House of Representative, Senatorial, or Federal Congressional redistricting plan within one hundred and twenty (120) days of the release of the Federal Decennial Census Data, then a "Fallback Mechanism" takes effect wherein the Oklahoma Supreme Court shall approve a plan consistent with the process and criteria set out in IP 426. §4(F) of IP 426. The Petitioners assert the gist does not reveal that "[t]he Commission can approve a redistricting plan only if (a) six of the nine commissioners approve, and (b) at least one Commissioner from each of the three Groups (Largest Party, Second Largest Party, and Unaffiliated) approves." Petitioners' Brief at 9. They speculate that the Oklahoma Supreme Court will be more involved in the redistricting process due to the vote count being more than a majority vote and voters deserve to know in the gist that the Commission cannot approve a redistricting plan with a simple majority vote, which they surmise, would ordinarily be the case.
¶14 In In re Initiative Petition No. 420, State Question No. 804, several Justices had concerns that merely stating the new Article would "create[] a fallback mechanism" in the gist, without more, was insufficient to explain the Court's role in the proposed redistricting process. 2020 OK 10, ¶3 (Winchester J., concurring). The Respondents heeded these concerns when drafting the gist of IP 426 which now states, in relevant part, "[t]he Article creates a fallback mechanism by which the state Supreme Court, using a report from the Special Master, will select a plan if the Commission cannot reach the required level of consensus within a set timeframe." (emphasis added).
¶15 In addressing challenges to omissions in a gist statement, "[t]he sole question . . . is whether the absence of a more detailed gist statement . . . without more, perpetuates a fraud on the signatories." In re Initiative Petition No. 363, State Question No. 672, 1996 OK 122, ¶19, 927 P.2d 558. "The measure's gist is not required to contain every regulatory detail so long as its outline is not incorrect." Id., ¶20. Title 34 O.S. 2011, § 3, only requires the gist to be a "simple statement" and we have held it should inform a signer of what the measure is generally intended to do. Id. The gist statement should also be "free from the taint of misleading terms or deceitful language." Id. The Petitioners assert it is critical to add to the gist statement the detailed voting requirements in order to inform the potential signatory of the true nature of the petition, i.e., the high likelihood the Supreme Court will be called upon to adopt the redistricting plan based upon these "super majority" voting requirements. Petitioners' Brief at 10. Whether or not this Court will be required to adopt a redistricting plan is mere speculation at this stage. This Court has previously declined to engage in speculation in our consideration of the validity of a gist. In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, ¶6 n.15, 376 P.3d 250; In re Initiative Petition No. 358, State Question No. 658, 1994 OK 27, ¶12, 870 P.2d 782. IP 426's gist statement clearly states this Court will select a plan if the Commission cannot reach the "required level of consensus" within a set timeframe. This statement is not misleading and informs the potential signatory in a simple statement that a certain "level of consensus" will be required by the Commission to vote on a redistricting plan, i.e., a vote that might not be composed of a mere majority of the commissioners. Therefore, as to this matter, we do not find the absence of more detail in this already very lengthy gist statement perpetuates a fraud on the potential signatories.
C. The gist statement's short mention of redistricting criteria is sufficient.
¶16 Section 4(D)(1)(c) of IP 426 provides:
c. The Commission shall also seek to maximize compliance with each of the following criteria, set forth in the following order of priority:
i. Communities of Interest. Districts shall minimize the division of communities of interest to the extent practicable. A Community of Interest is defined as an area with recognized similarities of interests, including but not limited to racial, ethnic, economic, social, cultural, geographic, tribal, linguistic, or historic identities. Communities of interest shall not include common relationships with political parties, officeholders, or political candidates.
ii. Racial and Ethnic Fairness. No redistricting Plan should be drawn to have the effect of denying or abridging the equal opportunity of racial or ethnic minority groups to participate in the political process or to diminish their ability to elect representatives of their choice, whether alone or in coalition with others.
iii. Political Fairness. No Plan should, when considered on a statewide basis, unduly favor or disfavor a political party. Undue favor to a political party shall be determined using the proposed map, data from the last ten years of statewide elections, and the best available statistical methods on identifying inequality of opportunity to elect.
iv. Districts shall respect the geographic integrity of political subdivision boundaries to the extent preceding criteria have been satisfied.
v. Compactness. A draft Plan should be compact to the extent preceding criteria have been satisfied.
The gist statement mentions all these criteria. It provides:
In creating the plans, the Commission must comply with federal law, population equality, and contiguity requirements, and must seek to maximize respect for communities of interest, racial and ethnic fairness, political fairness, respect for political subdivision boundaries, and compactness (in order of priority), without considering the residence of any legislator or candidate or a population's political affiliation or voting history except as necessary for the above criteria. (emphasis added).
¶17 The Petitioners single-out one of these criteria, "political fairness," and ask this Court to find the gist insufficient because the mere mention of political fairness in their view, without more explanation, does not inform a potential signatory of what the measure is generally intended to do. Petitioners' Brief at 14. They assert, political fairness has been found to have many meanings by the United States Supreme Court and some mention in the gist is needed to determine what type of political fairness the petition would implement. In Rucho v. Common Cause, voters in North Carolina and Maryland challenged their States' congressional districting maps as being unconstitutional partisan gerrymandering. 139 S.Ct 2484 (2019). The Court determined that "[p]artisan gerrymandering claims invariably sound in a desire for proportional representation" i.e., reapportioning district lines to come as near as possible to allocating seats to the contending parties in proportion to what their anticipated statewide vote will be. Id. at 2499. However, "[f]airness may mean a greater number of competitive districts" which seek "to undo packing and cracking so that supporters of the disadvantaged party have a better shot at electing their preferred candidates." Id. at 2500. The Court noted "[d]eciding among just these different visions of fairness (you can imagine many others) poses basic questions that are political, not legal." Id. Any decision on what is fair in this context would be an "'unmoored determination' of the sort characteristic of a political question beyond the competence of the federal courts." Id. (citation omitted).
¶18 As the Supreme Court determined, there are many visions of what fairness means in an apportionment context. IP 426's definition of political fairness provides that no plan should unduly favor or disfavor a political party and this will be determined using the proposed map, data taken from the last ten years of statewide elections, and best available statistical methods on identifying inequality of opportunity to elect. Petitioners acknowledge the definition of political fairness in the petition relies upon the term "undue favor" which is defined as the "inequality of opportunity to elect." Petitioners' Brief at 12-13. However, they argue that even this language is not in the gist. Although, the Supreme Court found federal courts were not appropriate for interpreting such fairness issues, the Commission here is the appropriate body to make such interpretations. Respondents contend the definition leaves a certain amount of leeway for the Commission to interpret in order to implement its provisions.
¶19 The gist needs to inform a potential signatory in a simple statement of the measure's true nature. In re Initiative Petition No. 420, State Question No. 804, 2020 OK 10, ¶7. The gist states its purpose is to prevent political gerrymandering and, as mentioned, presents details on the subjects this Court was concerned about in In re Initiative Petition No. 420, State Question No. 804. The gist provides that in creating the redistricting plans certain criteria will be used. Political fairness is only one of the many criteria mentioned in the gist and body of the petition. The gist puts a potential signatory on notice that the Commission will seek to maximize political fairness as well as the other criteria. The details on this criterion are found in the petition. A detailed description of this one criterion is not necessary to be placed in the gist. In In re Initiative Petition No. 384, we held a gist was insufficient. 2007 OK 47, ¶3, 164 P.3d 125. In our analysis, we noted the proponents had "cut and paste[d]" into the gist the definition of "classroom instructional expenditures" in "mind-numbing detail" but did not do this for other definitions. Id., ¶12. This we found "resulted in a gist that, at once, contains too much and not enough information." Id. We noted, "[i]t may not be necessary to define either "classroom instructional expenditures" or "operational expenditures" with the same kind of detail used by the Proponents in this gist, but the inclusion of one overly detailed definition without any definition of the other term creates an imbalance at odds with the purpose of the gist." Id., ¶12 n.4.
¶20 We hold, this very lengthy gist provides sufficient information and addressed our concerns in In re Initiative Petition No. 420, State Question No. 804. Including the details of only one of the redistricting criteria without others creates the same problems this Court recognized in In re Initiative Petition No. 384. The Petitioners would require too much of the gist of this initiative petition. See In re Initiative Petition No. 362 State Question 669, 1995 OK 77, ¶10, 899 P.2d 1145.[4] The time period for filing an application for rehearing is hereby shortened to five business days from the date on which this opinion is filed. See Okla.Sup.Ct.R. 1.13.
THE GIST OF INITIATIVE PETITION NO. 426, STATE QUESTION NO. 810 IS LEGALLY SUFFICIENT 

¶21 Gurich, C.J., Darby, V.C.J., Kauger, Winchester, Edmondson, Combs, Kane, Rowe, JJ., and Reif, S.J., concur.
¶22 Colbert, J., recused.

FOOTNOTES

[1] "Any citizen can protest the sufficiency and legality of an initiative petition." In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, ¶2, 376 P.3d 250 (quoting In re Initiative Petition 384, 2007 OK 48, ¶2, 164 P.3d 125).

[2] Indeed it must be short as a practical matter because each signature sheet wherein the gist must be placed will also contain twenty numbered lines for signatures. Title 34 O.S. Supp. 2015, §2.

[3] The provisions of §4(B)(4)(b) are the same in both IP 420 and IP 426.

[4] Therein, we held:
Some Protestants complain that the gist of the proposition fails to adequately explain the proposition. These Protestants contend that the gist of the proposition fails to explain the extent of the changes that would actually be made. Protestants would require too much of the gist of an initiative petition. The gist of a proposition, which is required by law to appear at the top of each signature page, need only contain "a simple statement of the gist of the proposition." 34 O.S. Supp. 1992 § 3. The gist need not satisfy the more extensive requirements for ballot titles contained in 34 O.S. Supp. 1994 § 9. In re Initiative Petition No. 347, State Question No. 639, 813 P.2d 1019, 1026 (Okla. 1991); In re Initiative Petition No. 341, State Question No. 627, 796 P.2d 267, 274 (Okla. 1990). The gist of a proposition must be short. As it must appear at the beginning of every page of the petition, it can contain no more than a shorthand explanation of a proposition's terms. This Initiative's gist explained that the proposition would limit annual increases in property taxes, establish a vote of the people to increase them, and define procedures for increasing them. This was sufficient. The statement of the Initiative's gist satisfies 34 O.S. Supp. 1992 § 3.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 53, 796 P.2d 267, 61 OBJ 1641, Initiative Petition No. 341, State Question No. 627, In re
Cited
 1990 OK 75, 797 P.2d 326, 61 OBJ 1655, Initiative Petition No. 344, State Question No. 630, In re
Discussed
 1991 OK 55, 813 P.2d 1019, 62 OBJ 1880, Initiative Petition No. 347 State Question No. 639, In re
Cited
 1992 OK 122, 838 P.2d 1, 63 OBJ 2386, Initiative Petition No. 349, State Question No. 642, In re
Discussed
 1994 OK 27, 870 P.2d 782, 65 OBJ 886, In re Initiative Petition No. 358, State Question No. 658
Discussed
 1995 OK 77, 899 P.2d 1145, 66 OBJ 2313, In re Initiative Petition No. 362 State Question 669
Discussed at Length
 2006 OK 45, 142 P.3d 400, IN RE: INITIATIVE PETITION NO. 382, STATE QUESTION NO. 729
Discussed at Length
 2006 OK 89, 155 P.3d 32, IN RE: INITIATIVE PETITION NO. 379
Discussed
 2007 OK 48, 164 P.3d 125, IN RE: INITIATIVE PETITION NO. 384, STATE QUESTION NO. 731
Discussed at Length
 2007 OK 47, 192 P.3d 286, BURRELL v. BURRELL
Cited
 1996 OK 122, 927 P.2d 558, 67 OBJ 3423, In re Initiative Petition No. 363, State Question No. 672
Discussed at Length
 2016 OK 1, 367 P.3d 472, IN RE INITIATIVE PETITION NO. 403 STATE QUESTION NO. 779
Discussed at Length
 2016 OK 51, 376 P.3d 250, IN RE INITIATIVE PETITION NO. 409, STATE QUESTION NO. 785
Discussed at Length
 2018 OK 25, 414 P.3d 367, McDONALD v. THOMPSON
Discussed
 2020 OK 10, 458 P.3d 1080, IN RE: INITIATIVE PETITION No. 420 STATE QUESTION No. 804
Discussed at Length
Title 34. Initiative and Referendum
 Cite
Name
Level

 34 O.S. 2, Initiative Petition - Form
Cited
 34 O.S. 3, Petitions and Signatures
Discussed at Length
 34 O.S. 8, Filing Copy of Proposed Petition - Publication - Protest - Hearing and Determination - Signature Gathering Deadline
Cited
 34 O.S. 9, Ballot Title - Filing - Review - Appeal
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA