OSCN Found Document:ALLISON, et al. v. MCCOY-POST, et al.

 

 
 ALLISON, et al. v. MCCOY-POST, et al.2026 OK 4Case Number: 122946Decided: 02/03/2026THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2026 OK 4, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

KYLE ALLISON; VERNON McKOWN, JR.;DAVID NIMMO; and PHILIP QUINN,
Petitioners/Appellees,
v.
PAMELA SUE MCCOY-POST; PAUL THOMAS ARCAROLI; and RICHARD LORENZ SONDAG,
Respondents/Appellants.

APPEAL FROM DISTRICT COURT OF CLEVELAND COUNTY,
OKLAHOMA, HONORABLE JEFF VIRGIN

¶0 The trial court granted Protestants' Protest to the Legal Sufficiency of Referendum Petition 2425-1, finding the gist of Referendum Petition 2425-1 legally insufficient. On appeal, we affirm.

APPEAL PREVIOUSLY RETAINED ON MOTION OF PETITIONERS;
ORDER OF THE TRIAL COURT AFFIRMED

Robert E. Norman, Oklahoma City, for Respondents/Proponents/Appellants.

Glenn Coffee, Michael Fields, and Denise Lawson, Glenn Coffee and Associates PLLC, Oklahoma City, Oklahoma; Sean Paul Rieger and Daniel Sadler, Reiger Sadler Joyce LLC, Norman, Oklahoma; and Scott Henderson and Spencer F. Smith, McAfee & Taft, Oklahoma City, for Petitioners/Protestants/Appellees.

KUEHN, V.C.J.:

¶1 Referendum Proponents appeal the Cleveland County trial court's order granting the Protest to the Legal Sufficiency and Signature Count of Referendum Petition 2425-1, Ordinance No. 2425-2 City of Norman, Oklahoma filed by Protestants. We affirm the trial court's finding that the gist of Referendum Petition 2425-1 is legally insufficient.

Background

¶2 In November of 2023, the City of Norman adopted a resolution to consider approving the Rock Creek Entertainment District Project Plan. In general, the Rock Creek Plan would expand the University North Park area to add additional hotel, office, residential, and retail spaces with a multipurpose arena and a public plaza east of I-35 between Rock Creek Road and Tecumseh Road.

¶3 On September 17, 2024, the City adopted Municipal Ordinance No. O-2425-2 to create two tax increment financing districts: a sales tax incremental district, "TIF District 4," and an ad valorem increment tax district, "TIF District 5," to support the construction of the multipurpose arena, a parking garage, and related infrastructure as part of the Rock Creek Plan. Three percent of TIF District 4's gross proceeds or receipts would be collected from the City's non-dedicated sales/use taxes and allocated to the Rock Creek Plan. Ordinance O-2425-2, § 9, Protest, Ex. B, Record on Appeal (ROA), 44. Ad valorem taxes in excess of base-assessed values in TIF District 5 would be apportioned to pay for the project costs. Id., § 10; ROA, 45. The increments from both TIF Districts would remain active until the first of three occurrences: (1) when funds have been provided to allow non-City parties to service debt in an amount of $230,000,000 in principal plus interest; (2) when a total of $600,000,000 in public assistance is provided; or (3) after the passage of twenty-five years from the creation of the TIF Districts. Id. at §§ 9, 10 (citing Rock Creek Project Plan, § IX). 

¶4 On September 20, 2024, Proponents submitted Referendum Petition 2425-1 to the Norman City Clerk. 

Standard of Review

¶5 The first power reserved by the people is the initiative and the second is the referendum. Okla. Const. art. V, § 2. The right to petition by initiative and referendum is a sacred right. Oklahoma's Child., Our Future, Inc. v. Coburn, 2018 OK 55421 P.3d 867In re Initiative Petition No. 420, State Question No. 804, 2020 OK 9458 P.3d 1088In re State Question No. 813, Initiative Petition No. 429, 2020 OK 79476 P.3d 471

¶6 The Ordinance was enacted pursuant to the Local Development Act, 62 O.S. § 850et seq. The Act allows a city or county to finance an approved project plan in areas where economic growth is difficult through increment tax financing, a tax increment financing mechanism that dedicates increments from certain local taxes to the project costs. 62 O.S. §§ 85262 O.S. § 86362 O.S. § 86862 O.S. § 868Id. A party may file a protest to the petition, the signature count, or the ballot title in the district court in the county in the situs of the city. 62 O.S. § 868

¶7 Section 868 of Title 62 does not require that a referendum petition include a gist. Because Proponents included a gist with Referendum Petition 2425-1, this Court considered whether the gist included was legally sufficient. See Miller v. Ellis, 2020 OK 52467 P.3d 691de novo review. Miller v. Ellis, 2020 OK 52467 P.3d 691 In re Initiative Petition No. 426, State Question No. 810, 2020 OK 44465 P.3d 1259In re Initiative Petition No. 384, 2007 OK 48164 P.3d 125Tay v. Green, 2022 OK 37508 P.3d 431In re Initiative Petition No. 425, State Question No. 809, 2020 OK 58470 P.3d 284

The Proposed Measure

¶8 The gist of the Petition provides:

The referendum petition seeks an election for the voters of Norman to approve or reject City of Norman Ordinance 0-2425-2. This Ordinance adopts and approves the "Rock Creek Entertainment District Project Plan." The Project Plan area is located between Interstate 35 and Max Westheimer Airport, and it runs south from Tecumseh Road to an area just south of Rock Creek Road.

The Project Plan creates two Tax Increment Financing (TIF) Districts. Increment District No. 4 allocates 100% of the City's non-dedicated, general fund and capital improvement sales and use taxes generated in District 4, beginning May 1, 2025. Increment District No. 5 allocates 100% of certain ad valorem taxes (taxes in excess of the base assessed values of property within District 5) generated in District 5, beginning December 31, 2026. Both Districts would last a maximum of 25 years.

The Project Plan authorizes project costs of up to $600,000,000 for administration, implementation, and assistance to the Project Developer in financing $230,000,000 in costs related to the construction of an arena, a parking garage, and additional infrastructure. The incremental tax revenues generated and allocated in the TIF Districts, along with all potential state matching funds, would be used to pay for authorized project costs, and for no other purpose.

Protest, Ex. A, ROA, 37.

 

Analysis

¶9 Proponents appeal the trial court's conclusion that the gist was legally insufficient, arguing that the gist was free from the taint of fraud, deceit, corruption, or misleading terms, and that it sufficiently informed potential signatories of what the Rock Creek Plan was intended to do. 

¶10 According to Protestants, the gist misstated the maximum amount of public assistance made to the Rock Creek Plan. Protestants contend that the gist inaccurately conveyed that the project would cost up to $600,000,000 in costs plus $230,000,000 in financing assistance to the project developer. Protestants argue that the gist should explain that, by the Ordinance, the City has not agreed to encumber other funds and the City's funding obligations terminate at the occurrence of the earliest of three triggering events.

¶11 A gist must provide sufficient information for a potential signatory, who may choose to look only at the gist before signing a petition, to make an informed decision about the Ordinance and the Rock Creek Plan. In re Initiative Petition No. 384, 2007 OK 48164 P.3d 125Id. The gist in this case suggests that the incremental taxes would last for a period of up to twenty-five years, rather than ending at the first of three occurrences. The gist, therefore, does not provide potential signatories with a clear understanding of how long the obligation would last. Because of this omission, the gist "does not provide a potential signatory with sufficient information to make an informed decision about the true nature" of the Ordinance and the Rock Creek Plan. In re Initiative Petition No. 409, 2016 OK 51376 P.3d 250

¶12 Additionally, the gist's phrasing that the "Project Plan authorizes project costs of up to $600,000,000 for administration, implementation, and assistance to the Project Developer in financing $230,000,000 in costs" inaccurately describes the maximum amount of public financial assistance. While a gist need not include "every regulatory detail" in the gist, the outline provided in the gist must be accurate in order to be legally sufficient. In re Initiative Petition No. 425, 2020 OK 58

¶13 Protestants assert that the gist misidentifies the categories of incremental sales/uses taxes allocated to the Rock Creek Plan so a potential signatory might believe that three categories of taxes--non-dedicated taxes, general fund taxes, and capital improvement taxes--would be allocated to the Rock Creek Plan and that the gist should inform potential signatories that three percent of the City's sales tax rate would be allocated to the Rock Creek Plan. When reviewing the sufficiency of a gist, this Court does not require a detailed description of restrictions or limitations. See In re Initiative Petition No. 420, State Question No. 804, 2020 OK 10458 P.3d 1080In re Initiative Petition No. 426, State Question No. 810, 2020 OK 44465 P.3d 1259McDonald v. Thompson, 2018 OK 25414 P.3d 367and

¶14 Protestants argue that the gist contains multiple other deficiencies, including the use of highly technical and complicated terms and omissions of the public entities that will oversee the Rock Creek Plan; that the City will not issue any public debt; that the principal objectives of the Rock Creek Plan are not listed; that the project would include hotel, office, residential, and retail spaces; and that the Rock Creek Plan is a pay-as-you-go plan. We disagree that the gist must include all the information advocated for by Protestants. As noted, a gist need not contain every regulatory detail so long as the outline itself is not incorrect. In re Initiative Petition No. 420, State Question No. 804, 2020 OK 10458 P.3d 1080Miller v. Ellis, 2020 OK 52467 P.3d 691In re Initiative Petition No. 420, State Question No. 804, 2020 OK 10458 P.3d 1080

Conclusion

¶15 We agree that the gist misstates the maximum amount of public assistance made to the Rock Creek Plan and omits that the TIF Districts will remain active until the first of the three triggering events. The misstatement and omission of the three triggering events makes the gist incorrect and misleading. We hold, on these grounds, that Referendum Petition 2425-1 is legally insufficient.

¶16 Proponents' Motion for En Banc Oral Argument is denied.

PREVIOUSLY RETAINED ON MOTION OF PETITIONERS;
ORDER OF THE TRIAL COURT AFFIRMED.

CONCUR: KUEHN, V.C.J., and WINCHESTER, EDMONDSON, COMBS, GURICH, DARBY, KANE and JETT, JJ.

DISSENT: ROWE, C.J. (by separate writing).

FOOTNOTES

See Rock Creek Entertainment District Project Plan, § IX(A)(2), Protest, Ex. C, ROA, 51.

See 62 O.S. § 868cf. 34 O.S. 2020 § 3(4) ("A simple statement of the gist of the proposition shall be printed on the top margin of each signature sheet.").

Ordinance O-2425-2 adopts the "Rock Creek Entertainment District Project Plan," which includes assistance in development financing for construction of a multipurpose arena, parking garage, and related infrastructure. That Plan anticipates that $230 million will be borrowed for these projects. The Plan establishes two increment districts to support development of these projects.

Increment District 4 will start on May 1, 2025, allocating all non-dedicated sales tax revenue, 3% of taxable sales, within the District, to project costs. Increment District 5 will begin on December 31, 2026, allocating increased ad valorem tax revenue within the District to project costs.

Both districts will remain active until either $230 million in principal plus interest is repaid to the lender, $600 million in public assistance is provided, or 25 years pass, whichever occurs first.

Protest, Ex. E, ROA, 108.

 

 

ROWE, C.J., DISSENTING: 

¶1 The Oklahoma Constitution unequivocally declares that "all political power is inherent in the people." Okla. Const. art. 2, § 1. The first power reserved to the people is the initiative--the right to propose any legislative measure. The second power is the referendum--the right to present a proposed law to the people for a vote. Because the initiative and referendum are the closest expressions of direct democracy, and enshrined in the Oklahoma Constitution, this Court has a duty to fully preserve them to the fullest extent permitted by the spirit and letter of the law. In re Initiative Petition No. 448, 2025 OK 56577 P.3d 276

¶2 The Ordinance, enacted by the City of Norman under the Local Development Act, 62 O.S. §§ 850

¶3 Our jurisprudence is replete with case law on the gist of an initiative and referendum petition. Title 62 O.S. § 868

¶4 The purpose of the gist is to prevent fraud, deceit, or corruption in the initiative process. Miller v. Ellis, 2020 OK 52467 P.3d 691Id. at 69--93. But the gist need not include every detail, so long as its outline is not incorrect. Id. at 693.

¶5 Protestants contend the gist inaccurately conveys that the Plan authorizes $600,000,000 in project costs and $230,000,000 in financing assistance to the project developer. Additionally, Protestants argue the gist fails to describe that the collection of taxes will terminate upon the earliest of three occurrences: "(1) funds having been provided to allow non-City parties to service debt in a principal amount of $230 million; (2) $600,000,000 million in total having been provided to allow these parties to service this same debt (principal plus interest); or (3) the passage of 25 years from the Ordinance's creation of the TIF districts." 

¶6 Comparison of the Plan, the Ordinance, and the gist demonstrates that the gist accurately summarizes the governing documents. Protestants simply take issue with how that summary is presented. The Ordinance and the Plan are both of great textual complexity and were undoubtedly drafted by lawyers specialized in municipal finance law. To find that the gist is misleading we must conclude the governing documents it summarizes are misleading.

¶7 The gist accurately states that the Plan authorizes project costs up to $600,000,000. Section IX(2) of the Plan states the same: "The amount of Assistance in Development Financing shall not exceed $600,000,000." Importantly here, the gist utilizes "up to" to inform signatories that the highest amount to be collected in project costs is $600,000,000. The use of "up to" does not mandate that $600,000,000 must be collected, but only that the amount will not be surpassed.

¶8 Almost verbatim, the gist utilizes explicit language from the Plan to inform signatories what costs are included within the possible $600,000,000 in project costs.

 
 
 
 Project Plan - Authorized Costs
 
 
 Proponents' Gist - Authorized Costs
 
 
 
 
 Authorized Project Costs Include Assistance in Development Financing and Administration/Implementation.
 
 
 The Project Plan authorizes project costs of up to $600,000,000 for administration, implementation, and assistance to the Project Developer...
 
 
 
 
 The amount of Assistance in Development Financing shall not exceed $600,000,000.
 
 
 authorizes project costs of up to $600,000,000...
 
 
 
 
 Assistance in Development Financing consists of amounts paid to the Project's developer to incentivize the Project. for the Project's developer and its development partners to finance $230,000,000 in private development and public infrastructure costs.
 
 
 assistance to the Project Developer in financing $230,000,000 in costs related to the construction of an arena, a parking garage, and additional infrastructure.
 
 
 

 

¶9 Within the Plan, subsection (2) details what is included in the authorized costs and subsection (3) explains the meaning of "Assistance in Development Financing." The gist appropriately simplifies these provisions by outlining what costs are included within the $600,000,000 cap on authorized project costs.

¶10 Finally, the gist states that "[b]oth Districts would last a maximum of 25 years." Section 9 and 10 of the Ordinance state the tax increments may be used to pay for the project "for a period not to exceed 25 fiscal years from the effective date" of the Increment District. The gist's statement that a tax will last for a maximum of 25 years conveys precisely the same limitation of the Ordinance: the tax will not last longer than 25 years.

¶11 Protestants additionally contend the gist is insufficient because it fails to specify that the tax will terminate upon the occurrence of the earliest of three conditions. But the gist is not required to include "every regulatory detail so long as its outline is not incorrect." In re Initiative Petition No. 425, State Question No. 809, 2020 OK 58470 P.3d 284

¶12 The gist, as written, communicates that the tax may last 25 years--aligning with the Ordinance. Nonetheless, the Majority concludes the gist does not provide signatories with a clear understanding of how long the obligation will last. Majority Op. ¶ 11. But it does--the tax obligation may last 25 years at the longest. The specifics on how that might occur is not so insufficient under our jurisprudence to render the gist misleading--nor is it a fraudulent explanation. 

¶13 Upon review, the gist is not inaccurate, misleading, and is certainly not fraudulent. It synthesizes the technically complex governing documents that--in themselves--are difficult to decipher. The gist is not required to resolve such technical complexities--rather it is tasked with providing signatories a fair outline of the measure's substance to prevent fraud, deceit, or corruption. The referendum power should not be crippled, avoided, or denied by technical construction by the courts. In re Initiative Petition No. 448, 2025 OK 56577 P.3d 276

¶14 The peoples' fundamental right to referendum is rooted in our Constitution and must be zealously protected. I cannot accept that Proponents' gist is so inadequate as to deprive the voters of their constitutional right to vote--up or down--on the Ordinance. I would allow the Ordinance to go to a vote of the People. Accordingly, I respectfully dissent.

FOOTNOTES

34 O.S. § 1et seq.

62 O.S. §§ 850

The Rock Creek Entertainment District Project Plan (the "Project Plan") creates two increment districts. Increment District No. 4 is a sales tax increment district that would allocate 100% of the sales tax increment (defined as the non-dedicated portion of the City's sales and use taxes generated within the District) beginning May 1, 2025 and lasting for a maximum of 25 years pursuant to the Act. Increment District No. 5 is an ad valorem increment district that would allocate 100% of the ad valorem increment (defined as the ad valorem taxes in excess of the base assessed values of the property within the District) beginning December 31, 2026 and lasting for a maximum of 25 years pursuant to the Act. Funds generated within the Increment Districts will be held by the Norman Tax Increment Finance Authority (the "Authority") for authorized project costs.

The Project Plan authorized project costs up to $600 million for expenditure on Administration/Implementation and Assistance in Development Financing. Assistance in Development Financing is intended to assist the Developer to finance $230 million in private development costs related to the construction of an arena and a parking garage serving the arena, as well as additional needed infrastructure. Any state funds received pursuant to the Leverage Act will also be provided to the developer for the improvements. The lesser of 2% of the ad valorem increment or $200,000 per year will be allocated to the Authority for costs related to the creation and implementation of the Project Plan.

Appellants' Brief in Chief, 18 (emphasis added).

In re Initiative Petition No. 426, State Question No. 810, 2020 OK 44465 P.3d 1259